[No. 3640.]

HOTTELL ET AL. v. THE FARMERS' PROTECTIVE ASSOCIA-
TION.

1. DAMAGES.
In an action for damages for wrongfully preventing the use of water power for an elevator, the cost of substituting steam power was a proper measure of the damages.

2. SAME—PRACTICE.
In an action for damages for wrongfully preventing the use of water power, it was not error to permit a recovery to a date subsequent to the bringing of the action, where the parties had stipulated that in case damages were awarded they might be extended to such date.

3. CONVEYANCE — WATER POWER — COVENANT RUNNING WITH THE LAND.
A party owned a mill and elevator situated on adjoining tracts of land. The elevator was operated by water power from the mill race conducted to the elevator by means of machinery connected with and a part of the real estate of the mill tract. He sold and conveyed the elevator and tract of land on which it was situated, together with a grant of a perpetual water power from the mill race to operate the elevator, and the perpetual use of all machinery necessary to the successful application and use of the water power to operate the elevator. *Held* that the grant conveyed not merely a license to use the water power, but the right to have that power delivered to the elevator so as to operate the same without any further cost than the purchase price paid. The grant was a covenant running with the land, and a subsequent purchaser of the mill and land on which it was situated was obliged to fulfil the covenant. The fact that the mill and machinery existing at the time of the sale and used for conducting the water power were destroyed by fire did not relieve the owner from the further burden of the covenant when another mill was built in the place of the one destroyed and new machinery put in.

*Appeal from the District Court of Weld County.*

ON March 19, 1884, Benjamin F. Hottell was the owner of two adjacent tracts of land at Fort Collins, Colorado, separated merely by an arbitrary line, situate upon one of which was a grain elevator, and upon the other, and near this elevator, was a flouring mill. On the last mentioned tract was a mill race, and at the end thereof an iron pipe line into which water from the race flowed, and thence was discharged on to a water wheel connected with the mill machinery, thus furnishing the motive power for the mill, and, by a sprocket chain connected with said machinery, power was transmitted to the elevator. This wheel and the machinery and appliances were so affixed to the mill as to become a part of the freehold.

On the day mentioned, Hottell, for a consideration of $20,000, sold and conveyed to the Farmers' Protective Association (the plaintiff below and the appellee here) the land on which the elevator was situated, and the perpetual use of said water power and all machinery necessary for applying power to the elevator, and the language employed in the grant of these rights is as follows : " The use of water from that mill race known as the Mason and Hottell mill race perpetually to furnish power to operate and run the elevator standing upon the premises aforesaid. Also the perpetual right to the use of all the machinery necessary to the successful application and use of said water power to operate said elevator. To connect with chain running from the mill to the elevator." There was also an agreement in the deed " that when the water power shall be insufficient to operate both the mill and elevator, the elevator shall have the preference and priority in the use of the same." The deed, containing covenants of seisin, against incumbrances, for peaceable possession and quiet enjoyment, and a warranty, was duly placed upon record. In estimating the value of this property, the elevator itself was put in at $10,000, and the water right and use of machinery at a like sum.

. For a time after the conveyance Hottell himself retained ownership of the mill, during which period the company was

furnished by him with said water power and use of machinery. Afterwards, and on the 24th day of August, 1885, Hottell sold and conveyed to one Sloan the tract on which were said mill property, mill race, and machinery; and a few days thereafter Sloan, who, it seems, was acting as the representative of the defendant company, conveyed to it the same property by a quitclaim deed containing no express assumption by the grantee of Hottell's obligation, if any, respecting the water power.

On the 10th day of July, 1886, the mill and machinery in question were destroyed by fire. Immediately thereafter the defendant company erected another mill upon the site of the old one, finishing it in the latter part of the year 1886, or the fore part of 1887, and therein put new machinery for utilizing the water power. The second mill was destroyed by fire on the 5th day of October, 1895, and seems to have been replaced by a third one.

The evidence is unquestioned that the defendant company, soon after it acquired possession of the property, while apparently admitting that there were some rights in plaintiff to the water power, nevertheless protested against the claim asserted by the latter to the use of that power and mill machinery. The evidence is also to the effect that both of these defendants, from about the 10th day of July, 1886, to the 5th day of October, 1895, denied to the plaintiff, and excluded it from, the use of said water power and the machinery requisite to the successful application and use of the water power to run the elevator, and that they both refused the plaintiff access to said premises for the purpose of availing itself of such other means as it might employ to make application of said power.

The evidence tended to show that at the time of its purchase the defendant company had actual, as well as constructive, notice of the contents of the deed, and of the plaintiff's claim to the use and benefit of the water power and machinery, and knew that the plaintiff had actually availed itself of such use from the time of the purchase down to the time

of the defendant company's acquisition of the mill property, and of such use thereafter, for a short time, by permission of the local manager of the defendant company.

This action was brought to obtain a decree adjudging plaintiff to be entitled to the use of water from the mill race perpetually to furnish power for its elevator, and the perpetual right to the use of all machinery necessary to the successful application and use of power for that purpose, and for an order requiring defendants to furnish such power and permit the use of the same by the plaintiff without any obstruction, and to give the plaintiff the perference in its use whenever the same was insufficient to operate both the mill and the elevator. The plaintiff also claimed damages suffered by reason of its exclusion by defendants from the enjoyment of the rights claimed.

After the overruling of a demurrer interposed by defendants, they filed separate answers. Trial was had to the court without a jury, and damages were awarded to the plaintiff in the sum of $6,000, and a decree was entered establishing plaintiff's right to the perpetual use of the power and machinery, and enjoining the defendants from interfering with the plaintiff's use thereof, and commanding them to furnish it with, and permit the plaintiff to enjoy, the same. To reverse this judgment and decree the defendants prosecute this appeal.

Mr. W. C. KINGSLEY, Mr. T. J. O'DONNELL and Mr. MILTON SMITH, for appellants.

Mr. W. HENRY SMITH and Mr. WILLIS B. HERR, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Of the two branches of this case, one relates to the money judgment. Quite independently of the other questions as to

the duty of the defendants to furnish water power, it is clear that both defendants should respond in damages for the wrongs committed by them. It is here conceded that the plaintiff company had the right to the use of the mill race as the source of its water power, though the extent of the right as claimed is denied.

The mill race was on the defendants' premises, and for a series of years they obstructed the plaintiff in the use of the original appliances for delivering power to its elevator. They denied plaintiff access to their premises, whereby it might have availed itself of other means of transmission. But if such access had been permitted, it was valueless, because the defendants so built the second mill over the point of fall of water that its benefits could be utilized only in connection with the machinery of the mill. The plaintiff, thus excluded from its admitted rights, was obliged to, and did, through the instrumentality of a steam engine and its appliances, obtain a motive power for its elevator. The rule of damages adopted by the trial court was the reasonable cost to plaintiff of this steam power. Upon conflicting testimony estimating this cost from fifty cents to $4.00 per day, the court awarded damages in the sum of $6,000.

It is true that defendants make the point that the court erred in not limiting damages to the beginning of the action, but allowed a recovery to October 5, 1895, the time when the second mill was burned. This point might be good were it not, as recited in the findings and decree, the parties themselves stipulated that if the court awarded damages at all, the time might be extended to the latter date. This finding as to the amount of damages, as well as all other findings of fact, as set out in the foregoing statement, are supported by the evidence and conclusive upon us in this review.

The second branch presents much more important and difficult questions. For convenience it may be resolved into two subdivisions, though examination of the one involves more or less consideration of the other. The first inquiry is, what rights did Hottell sell and convey to the plaintiff? The

second, the nature and extent of the duty and liability of the defendants to the plaintiff in the matter of supplying motive power. The defendants contend that all that was conveyed was a mere right to use water from the mill race by means of the machinery in existence at the time of the sale; that these rights were in the nature of a license only, and did not amount to an easement. But this construction is altogether too narrow. The language does not import such meaning, and had the grantor intended to restrict the rights conveyed, either as to time or extent, he would have used apt words of limitation.

Neither could it have been the intention of the grantee to pay $10,000 for something that could be enjoyed, at most, during the wear of machinery, which, under the most favorable conditions, could last only for a brief period. We must look to the substance of this transaction, and, if necessary, beyond the literal terms of the grant, to ascertain the intent of the parties to it; and in the light of the facts, and considering the nature of the rights in controversy, we are clearly of the opinion that Hottell sold, and the plaintiff bought, not merely a water power, but the right to have that power delivered to its elevator so as to operate the same, and without any further cost to it than the purchase price paid. There is no limitation in the deed restricting the utilization of water power to any particular machinery, or its means of transmission to any designated mode; but the language is "the use of water from that mill race * * * perpetually to furnish power to operate and run the elevator; * * * also the perpetual right to use of all the machinery," not machinery then *in esse*, but "all the machinery necessary to the successful application and use of said water power to operate said elevator."

This naturally leads to a consideration of the other subdivision concerning the nature and extent of defendants' liability under the grant. We suppose it will be conceded that, in legal effect, this grant is as extensive as if there had been in the deed a covenant binding the grantor, his heirs and assigns, to furnish perpetual water power. Certainly,

both upon principle and authority, a grantor's obligation which arises from an executed agreement in the form of a grant is, to say the least, as comprehensive as a covenantor's agreement would be under a covenant. In legal contemplation the grant is as burdensome to the grantor, and as beneficial to the grantee, as, in these particulars, a covenant would be to the covenantor and covenantee.

But, the defendants say, this grant transferred to the plaintiff a mere license; that the thing granted was in the nature of a personal covenant, binding only upon Hottell, and if upon his grantee at all, only so long as the mill and existing machinery lasted; and when, through no fault of the owner, they were destroyed, the privilege or right was extinguished; that the right did not constitute an easement; in short, that the obligation of the grantor was not, in effect, a covenant running with the land.

So to hold manifestly would not carry out the intention of the parties. It is not reasonable to suppose that any sane man, capable of contracting, would pay $10,000 for a perpetual water power and a perpetual right to use facilities for its transmission from where it was generated to the place of application, and rely solely upon the personal responsibility of the grantor and his personal representatives for a fulfilment of the contract; when the next day the grantor might become bankrupt, or the right purchased become valueless by a mere transfer of the land over and to which the easement in question attaches. The fact that the rights conveyed were perpetual shows that they would continue long after the death of the grantor; and even if the elevator itself should have burned, the right itself was not lost; and to enjoy a perpetual right such as this was possible only in connection with the servient estate, and by compelling its owner to keep the engagement, whether he be the grantor or his assignee. No reasonable man would be likely to trust to the uncertain chance of recovering for a breach of contract from the grantor, or his personal representative. Moreover, this water power could lawfully be supplied only by the owner

of the land to which the easement attached, or by some one acting under his authority; and parties would not, in a case of such importance as this, trust to a personal guaranty, which the grantor might so easily put beyond his power to perform. The intention of the parties, therefore, unquestionably was to place the burden of the easement not merely upon the grantor, but upon the servient estate and its owner; and the language of the grant effectuates that intention. There is no reason why parties may not make such a contract; and such a covenant running with the land is obnoxious to no rule of common or statutory law.

*Spencer's Case*, reported in 1 Smith's Leading Cases (9th ed.), 174, is the leading case on covenants running with the land. The case itself and notes, especially of the American editor, contain much learning upon an interesting and intricate subject. It is said in the American notes that " The English editor expresses great doubt whether covenants entered into by the owners of land in any case run with the lands, so as to bind the assignee of the covenantor. It is clearly settled in this country that they will, and the argument that ' an inconvenience which would be the result of holding them to do so is that the assignee would frequently find himself liable to contracts of the very existence of which he was ignorant, and which, perhaps, would have deterred him from accepting a conveyance of the land, if he had known of them,' has no application under the system of registration in force here."

In this connection it is pertinent to observe that not only was the deed from Hottell to the plaintiff placed upon the record before the defendant company acquired any rights to the premises retained by Hottell, but the evidence tends to show that it had actual knowledge of the plaintiff's claim, and that its representatives, at the time of the purchase, were upon the premises in question, and for themselves could, and did, see the use which the plaintiff was making of the mill and its machinery, and from the physical evidence there apparent was charged with notice of plaintiff's claim.

A case quite similar to the one at bar is *Fitch v. Johnson*, 104 Ill. 111. A company, owning a tract of land on which were a dam and water power, and an adjacent tract upon which was a flouring mill, sold the latter and twenty-five hundred inches of water for operating the same, and agreed to keep the dam and its appliances in repair, as they constituted the only means of supplying the water power. Afterwards the company conveyed the dam and the land on which it was situated, and the grantee of the flouring mill also sold its mill and water right. The grantee last mentioned then brought suit against the other grantee for failure to repair the dam, and the court held that the benefit of the covenant passed with the land of the covenantee, and the burden with that of the covenantor. The case is an instructive one, and clearly is authority for the ruling of the district court in the pending case.

Summing up the doctrine upon this question, the American editor, *Spencer's Case, supra*, p. 215, says: " In the cases of this class, a burden to do or forbear from doing some act directly concerning or touching the land is imposed on land of the covenantor for the benefit of land of the covenantee, and he who takes the land of the covenantor takes it *cum onere*, and he who takes that of the covenantee takes it with the benefit of the covenant. In other words, an easement, or something in the nature of an easement, is created, the benefit of which will run with the dominant estate of the covenantee, or the burden with the servient estate of the covenantor, or both."

That privity of estate is present is not denied, and that the covenant for quiet enjoyment is broken seems beyond question. Other authorities in support of our conclusion that the burden of this easement, or privilege, is on the servient estate and its owner are: *Morse v. Aldrich*, 19 Pick. 449; *Norcross v. James*, 140 Mass. 188; *Bronson v. Coffin*, 108 Mass. 175; *Easter v. Little Miami R. R. Co.*, 14 Ohio St. 48; Hilliard on Real Property, 390–392, ¶¶ 37, 48, 49 and 50; Williams on Real Property (17th ed.), 176, 471; Tiedeman on Real

Property, § 862; 1 Washburn on Real Property (4th ed.), 495; 2 Washburn on Real Property (4th ed.), 284–287; 2 Sugden on Vendors (6th Am. from 10 Eng. ed.), 468, 484; Authorities referred to in *Spencer's Case, supra.*

We are, however, referred to cases holding that when the servient estate is destroyed through no fault of its owner, the easement is extinguished. To this effect are *Duncan v. Rodecker,* 90 Wis. 1; 62 N. W. Rep. 533; *Shirley v. Crabb,* 138 Ind. 200; 37 N. E. Rep. 130; and others that might be cited. The ground upon which all of these cases hinge is that when the reason which called the easement into existence ceases, the easement itself no longer exists. This principle is sought to be applied to the case before us. The fallacy of the argument in support of this attempt is the unwarrantable assumption that the easement in question attaches only to the mill and machinery *in esse* when the easement was created, as contradistinguished from the soil, of which they are but a part. Hereinabove we have shown that this position is untenable. In addition to what we have there said, we add that when this mill and machinery were burned, the reasons for the existence of the easement did not cease, but survived. The easement attached to the land itself on which the mill and its appliances were erected. While the privilege which the plaintiff had in and over this land, viz., the right to have the water power thereon generated and delivered to its elevator, could be enjoyed by means of the mill and its machinery, it was not altogether dependent upon them, but other appliances for utilizing the power might be employed. The right to have the power delivered, not in any certain way, but the absolute and unqualified right to have this water power delivered at its elevator without cost, was what the plaintiff bought and paid for, and such was the nature of its easement in and over the land of the defendants. This being so, the easement was not extinguished when the mill burned, but merely suspended.

We are here met by the argument that this conclusion makes it the duty of the owner of the land on which the mill was

situate, in case of its destruction, to rebuild in order to furnish water power to the plaintiff. This does not necessarily, or at all, follow. Whether or not the defendant company is obliged to rebuild its mill is not a question in this case. We do hold, however, that it is the duty of the owner of this servient estate to continue to furnish water power to the plaintiff after the mill burned. But, as the defendants themselves have strenuously contended throughout this case, there are other means besides the mill and machinery for the utilization of this power. The fact remains that the mill was rebuilt, and its owners were then in a position readily, and at but slight cost, to supply the plaintiff with water power; and the law is that upon the restoration or reconstruction of the thing through and by means of which an easement is enjoyed, the easement itself is restored and revived, even though there was no obligation on the servient owner to restore the servient thing. Washburn on Easements, etc. (3d ed.), 686, § 8.

It follows from the foregoing that the judgment and decree of the district court should in all respects be affirmed, and it is so ordered.

*Affirmed.*