No. 21166.

IRVIN A. SMITH AND J. H. SMITH, A PARTNERSHIP KNOWN AS SMITH BROTHERS, AND IRVIN A. SMITH, J. H. SMITH AND VIOLET SMITH, INDIVIDUALS AND DBA KING COAL COMPANY AND SMITH BROTHERS *v.* C. L. WRIGHT AND WILLIAM M. HUNT.
(424 P.2d 384)

Decided February 14, 1967.

C. Hamilton Evans for plaintiffs in error.

Perkins & Cobb, William W. Downs, for defendants in error.

*En Banc.*

Mr. Chief Justice Moore delivered the opinion of the Court.

Defendant in error, hereafter referred to as Wright, brought an action in which he sought a determination of interests in certain described lands, rights-of-way, and easements situated in La Plata county, Colorado.

Prior to January 18, 1939, the real estate involved in this controversy was owned by one Henderson. On that date he sold to Cole and Girard a five-acre tract of hilly land which was underlain with a bed of coal. The coal could not be successfully mined without the use of two tunnels which were already in existence and which were located immediately to the north of the five-acre tract on property belonging to Henderson. It was also essential to the mining of the coal on the tract involved in the sale that the operators have the right to use of the surface of a valley some three hundred feet to the east,

for coal tipples and other buildings, and also the right to use of a right-of-way across Henderson's retained land for ingress and egress to and from the highway. This right-of-way will be mentioned as the old road.

To accomplish these objectives the deed from Henderson granted to Cole and Girard a perpetual easement in grantor's "South Tunnel" to be used for the removal of coal "from the lands hereby conveyed or hereafter acquired by the grantees." A perpetual easement was also granted in the other tunnel (North Tunnel) for the "ventilation of the mine workings which grantees may operate * * *." The grantees were also given a perpetual easement and right-of-way to use the private road of grantor across Henderson's land to the highway. The deed also contained a perpetual easement to use as much of the surface of the valley to the east of the land purchased as "* * * is necessary to successfully conduct mining operations in connection with the property above conveyed *or property or coal hereafter acquired by grantees* including the right to construct and maintain, alter, repair or replace tipples, trestles, scales, buildings, sheds, houses, dumping grounds necessary or convenient to mining operations." (Emphasis added.) This deed containing the easements above mentioned was placed of record.

On September 17, 1941, Cole and Girard obtained a lease of coal from the United States Government on a forty-acre tract of land lying immediately south of the five-acre tract which had been purchased from Henderson. This forty-acre tract was mined through the South Tunnel pursuant to the easement hereinabove mentioned.

In 1947 Henderson conveyed to Wright the real estate upon which the two above-mentioned tunnels were located, and which also included the "valley land" upon which the easement above mentioned was located, and over which the "old road" passed. This conveyance was by warranty deed which made no mention of any of the

easements to Girard and Cole. The rights originally granted by Henderson to Girard and Cole are now owned by plaintiffs in error who will be referred to as the Smiths.

In 1948 Wright purchased a right-of-way direct to the county road. All parties used this direct route, under a somewhat disputed oral arrangement, until the filing of the complaint by the plaintiff. The defendants are currently using the road in question under the terms and conditions of an order of the district court and predicated upon the additional posting and currently existing bond in the amount of $5,000. Prior to 1948, the defendants and their predecessors used what it hereinabove referred to as the "Old Road." Wright, in his complaint, sought to obtain a permanent injunction against the Smiths to prevent them from using any land on which the plaintiff owned surface rights, and to enjoin any further use of his direct right-of-way to the county road. On September 18, 1963, the court entered its Judgment and Decree. The court, *inter alia,* determined that the easements claimed by the Smiths were terminated. The court further determined that the Smiths no longer had a right to use the direct road to the county road. The judgment further directed that they remove certain buildings and structures, including the residence, from the surface of Wright's land.

A Motion for New Trial, and a Motion to Amend or Modify, were filed by the Smiths. The former was denied. The Motion to Amend or Modify, however, was granted and the court held a further hearing concerning (1) the need of the Smiths to use the surface of Wright's land for the piling of coal, maintenance of residence and other buildings in operations conducted under the United States Government Coal lease; and (2) the amount of bond required of the Smiths to protect Wright in the continued use of the right-of-way which was referred to as the direct route to the county road. It was urged by the Smiths that since the trial court

had terminated their easements they were entitled to ingress and egress as a "way of necessity" across the direct route to the county road. As a condition to this continued use pending a final determination of the controversy, the trial court ordered that the Smiths post a $5,000 bond. It was further adjudged that they would be confined to the use of limited areas as reflected by an "overlay" map pending final determination, and that they be required to post a second $5,000 bond as security for the payment of damages to Wright for use of the area included within this restricted area. In all other respects the initial judgment was adhered to.

It is argued by counsel that the trial court erred in terminating the easements in and upon the property acquired by Wright because such easements were described as "perpetual" and were not dependent on the continuance of mining operations on the original five-acre tract operated by the predecessors in interest of the Smiths, but were "perpetual" so long as "necessary or convenient" to mining operations conducted on that tract or so long as necessary or convenient "to successfully conduct mining operations" upon other *"property or coal hereafter acquired* by grantees." (Emphasis supplied.)

Admittedly, the Smiths were no longer carrying on any mining operations on the original five-acre tract, since the coal deposits in that area had been exhausted. The Smiths are now using the easements created in 1939 for continuous mining operations on the coal lands covered by the United States Government lease.

■ The trial court hinged its judgment upon the finding that:

"It was the intention of all parties to the instrument that said easements were granted only for the purpose of mining coal from the five-acre tract and other coal adjacent thereto, through the Coal King No. 1 Tunnel." In reaching this conclusion and in basing thereon its judgment terminating the easement, the trial court erred.

It is clear from the language used in creating the easements that Henderson, the grantor, had no intention to limit the easements to the continuance of mining operations on the five-acre tract, or to other properties to be mined through the facilities of the tunnels.

In 28 C.J.S. *Easements* § 54a, we find the following pertinent language:

"* * * cessation of the primary purpose for which an easement was granted has been held not to terminate the easement where it is not shown that such purpose was the sole purpose of its grant."

Not only was there no showing in this case that the primary purpose was the sole one, it is quite obvious from the wording that the easement was intended to be available even if coal was mined elsewhere than from the five-acre tract.

"* * * it is well settled that all rights expressly granted or necessarily incident to the enjoyment of an easement pass with it, this is the absolute limit of what passes." 28 C.J.S. *Easements* § 73.

Accordingly, we hold that the right of use of the surface in perpetuity to mine coal thereafter acquired by the grantee in accordance with the language used, was expressly granted.

The judgment is reversed and the cause remanded for further hearing if any such is required for the entry of judgment consistent with the views herein expressed.