[Civ. No. 13870. Fourth Dist., Div. Two. Jan. 20, 1976.]

COUNTY OF ORANGE, Plaintiff and Appellant, v.
CHANDLER-SHERMAN CORPORATION et al.,
Defendants and Respondents.

562

**COUNSEL**

Adrian Kuyper, County Counsel, and Arthur C. Wahlstedt, Jr., Deputy County Counsel, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jay L. Shavelson and N. Gregory Taylor, Assistant Attorneys General, Jerold A. Krieger and Katherine E. Stone, Deputy Attorneys General, Gibson, Dunn & Crutcher and G. Edward Fitzgerald for Defendants and Respondents.

**OPINION**

**GARDNER, P. J.**—County appeals from a judgment rejecting a claim of public rights arising from an alleged implied dedication of the beach areas and access to those areas in and around a beach in Orange County referred to as Dana Strand.

Dana Strand is a 2,000-foot portion of a long, narrow, sandy beach, sheltered by steep cliffs, which lies between Dana Point and Laguna Beach. Isolated and somewhat inaccessible, it lies a few hundred yards from Coast Highway 101, and during the pertinent times involved in this case could be reached by driving from that highway along a dirt road and across an unimproved area to the top of a bluff, then descending to the beach.

Respondent Chandler-Sherman and its predecessors in interest own the bluffs and the beach. The county attempted to establish public rights to the beach and to ingress and egress over the property of the owner to the beach. While the state appears as a respondent (joined as a defendant under Pub. Resources Code, § 6308), its position in this case is identical with that of the county.

The trial court took extensive testimony re use of the beach from numerous witnesses each of whom testified to his observations and use of the beach during the period between 1920 and 1956. In 1956, the present owner acquired the area, developed it and, without question, has excluded the public from the property thereafter.

The parties are in agreement that the controlling law is set forth in *Gion* v. *City of Santa Cruz* and *Dietz* v. *King,* consolidated cases, found in 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50].

At common law, a dedication was a gift of land and required an intention on the part of the owner to dedicate and acceptance by the public. (*Union Transp. Co.* v. *Sacramento County,* 42 Cal.2d 235 [267 P.2d 10].) Additionally, dedication may occur as the result of the owner's

acquiesence in a public use on a theory of an offer implied in fact. (*Laguna Beach* v. *Consolidated Mtg. Co.,* 68 Cal.App.2d 38 [155 P.2d 844].) This type of dedication is based on the owner's intent. However, a distinct type of dedication takes place when there is a public use for more than five years. Here, the owner's intent is not involved. The crucial factor is the public use without objection. This latter subject was explored in what Mr. Witkin refers to as an "innovative decision" in *Gion* and *Dietz, supra.* (3 Witkin, Summary of Cal. Law, p. 1834.)

In *Gion-Dietz,* the Supreme Court came to three conclusions.

(1) The only showing required is that persons used the property for more than five years believing that there was a public right to do so without objection or interference. There is no need to show a use otherwise adverse to the interests of the owner.

(2) The user need not prove that the owner did not grant a license to the public. If the owner has not attempted to halt public use in any significant way then, as a matter of law, it will be held that he intended to dedicate the property or an easement on the property to the public if the public has used the property for the prescriptive period.

(3) Strong constitutional and statutory policy favoring public use of shoreline recreational areas calls for application of the same rule of implied dedication to shoreline property as that rule applies to other property such as roads, passageways and paths.

In *Gion,* there had been extensive public use for over 60 years, plus public maintenance of the beach. In *Dietz,* there had been substantial use for over 100 years without any effective effort to control or exclude the public. In *Gion,* the court upheld the lower court's finding of implied dedication. In *Dietz,* the court reversed the lower court's finding of no dedication and found dedication as a matter of law.

Reaction to *Gion-Dietz* was prompt. In addition to soaring sales of chain link fences, as owners of shoreline property frantically attempted to bar the public from the use of their property, the case generated a spate of law review comment which was generally critical.[1]

---

[1]See 22 Stan. L. Rev. 564; 7 Cal. Western L. Rev. 259; 8 Cal. Western L. Rev. 75; 7 San Diego L. Rev. 605; 4 Loyola L. Rev. 438; 18 UCLA L. Rev. 795; 59 Cal.L. Rev. 231; 11 Santa Clara Law. 327; 4 Sw. U. L. Rev. 48.

In the instant case, the trial court found that there had not been use of this land sufficient to establish implied dedication. This finding, if supportable, is dispositive.

It is obvious that one person using another person's private beach once a year for five years cannot create an implied dedication. Just as obviously, the daily unrestricted use of that same beach for five years by thousands of sun worshippers and swimmers together with public maintenance of that beach will, under *Gion-Dietz,* amount to a dedication. Between these two extremes are presented questions of fact as to just how much use is necessary to indicate to an owner that his property is being dedicated. In *Gion-Dietz,* the court did not address itself to the question of the extent of the use, merely referring to the use of the beach as a "public recreational" area by persons believing that the public had the right to such use. "Litigants, therefore, seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land. If the land involved is a beach or shoreline area, they should show that the land was used as if it were a public recreation area." (*Gion-Dietz, supra,* at p. 39.) ■ However, common sense and reason would indicate, and we hold, that the use must be substantial rather than casual and even though the use need not be otherwise adverse to the interests of the owner, the scope and continuity of the use must be great enough to clearly indicate to the owner that his property is in danger of being dedicated.

Here, there had been unrestricted use of the beach prior to some undisclosed date in the 1930's when, by agreement with the original owner, a Mr. Noble operated a somewhat tacky beach camp on the premises, charging fees to some users although his operation could charitably be characterized as sloppy. During the war years, the beach was under the jurisdiction of the Coast Guard. From 1946 to 1956, there was again comparatively unrestricted use of the property although the owner did employ some guards and post some signs—neither very

U. L. Rev. 48.
Generally, these law review articles observed certain problems inherent in applying *Gion-Dietz.* They pointed out that in the traditional cases of implied dedication—roads, paths, passageways—the use is constant, the boundaries settled and well defined. However, in the application of *Gion-Dietz,* the courts are dealing with ill-defined use of areas lacking in precise definition. How much use is necessary for the owner to dedicate the use of his property to the public and what are the dimensions of this public recreational area which he has dedicated? Then, as some commentators ask, who has tort and maintenance responsibility for these public recreational areas which the owner has involuntarily dedicated to the public use?

effectively. Since 1956, the owner has totally restricted public use. Thus, the question presented is the extent of use prior to 1956.

■ Substantial evidence supports the court's finding that the use of the beach and its access were not sufficient to establish implied dedication. While the beach was used for surfing, fishing, swimming, picnicking, and sun bathing, the use was by small numbers rarely exceeding 12 to 15 people on the beach at any one time. (As indicated, the beach is 2,000 feet in length.) A prime incentive for the use of this beach was its isolation and seclusion. Some said it was attractive because it was "deserted." Others said that there were so few people using the beach that it was almost "like having the beach to ourselves." Others used the beach because "no one else was on the beach." Another said it was "like being practically alone."

Without reviewing the evidence in detail, it is clear that throughout the years the beach was used by individuals and groups. However, there is substantial evidence that this beach was never used as a public recreational area or a public park. While there was long term use it cannot be said that this was major or substantial. Thus, the trial court could well conclude, as it did, that the use of the beach was the casual use of a desolate, isolated beach which was hardly substantial enough to constitute use as a public recreational area to the extent that the owner dedicated the use of his property to the public.

The same can be said of access to the beach. There is no question but that access was had across the defendant's land by people going to the beach. However, this passage was casual, haphazard, diverse and the passageways ill-defined. Again, the scope and continuity of passage was not great enough to clearly indicate to the owner that the use of his property was in danger of being dedicated to the public.

■ However, the county contends that simply because it *was* an isolated beach, the amount of use shown in this case gives rise to an implied dedication as a matter of law. We cannot agree. Even though a beach is secluded and isolated, there still must be substantial use by the public as a public recreational area rather than casual use if the owner is to dedicate the use of his property to the public. The amount of use described in this case is hardly enough to support an implied dedication under *Gion-Dietz* as a matter of law.

It should be pointed out that some very obvious distinctions exist between the facts in this case and the facts in *Gion-Dietz.*

(A) In *Gion*, the use had been for some 60 years with extensive public parking on the property. Each witness stated that he had moved about the property freely without thought as to whether it was public or private land. The city maintained the property for this period of time by the posting of danger signs, resurfacing the parking area, installing an emergency alarm system and even spending one-half million dollars in an erosion prevention program. Obviously, there was extensive use of this beach as a public recreational area and the government had taken an active part in the maintenance of this beach with extensive repairs and improvements. None of this is to be found in the instant case.

(B) In *Dietz*, none of the present owner's predecessors had ever objected to the use of the road to the beach which use had been going on for over 100 years. In *Dietz*, the public came in substantial numbers and groups of Indians numbering 50 to 75 camped on the beach for weeks at a time. In recent times, this usage had increased until as many as 100 persons housed in campers and other vehicles used the beach. Efforts to obstruct the passage had been ineffective and the obstructions had not been significant.

In the instant case, we have no governmental concern with the premises. The number of persons using the beach was appreciably less and the use was for a much lesser period of time than in either *Gion* or *Dietz*. ▮▮▮ Here, the owner, over a considerable period of time, took reasonable and significant, although not necessarily effective, measures to control the use of the beach by the public. Granted that Mr. Noble's methods had not been highly efficient, nevertheless, he did run a beach camp and did charge admission to the public. Granted that the use of guards and the posting of signs following Mr. Noble's efforts had not been particularly effective, but it should be remembered that during this period of time the area was largely in the state of nature and only a minimum effort to control was necessary. Therefore, so long as the property was not being damaged and no public nuisance was being created, it was unnecessary for the owner to install chain link fences or hire armed guards to protect his beach from the onslaught of the public.

Since we have determined that substantial evidence supports the court's finding against user, proper considerations of conservation of judicial resources persuade us that there is nothing to be gained by further discussion of the other issues presented, i.e., whether the actions by the owner were sufficient to rebut dedication of the beach to the public, whether the public is estopped from asserting its rights to the

property, and whether the application of a bona fide purchaser rationale would defeat the public's rights.[2]

County urges two errors in evidentiary rulings which are not deserving of discussion. No conceivable prejudice could have resulted from either ruling.

Judgment affirmed.

Kaufman, J., and McDaniel, J., concurred.

A petition for a rehearing was denied February 9, 1976, and the opinion was modified to read as printed above. The petitions of the appellant and the respondent State of California for a hearing by the Supreme Court were denied March 18, 1976.

---

[2]The county contends that the trial judge did not understand *Gion-Dietz* and, therefore, misapplied the law. However, a fair reading of Judge Walsworth's rather pungent observations lead to the conclusion that he was developing two concepts: (a) that all opinions by the reviewing courts of this state are not necessarily monuments of clarity, and (b) that there is a widespread feeling among trial judges that some reviewing courts have an unfortunate tendency to retry the facts in cases they are supposed to be reviewing.