[Civ. No. 41178. First Dist., Div. Three. May 8, 1978.]

LEROY T. CUSHMAN, Plaintiff and Appellant, v.
RICHARD D. DAVIS et al., Defendants and Respondents.

## COUNSEL

Little, Evans, Zoller, White, Dok, Daiker & Matteoni, Norman E. Matteoni, Miller, Starr & Regalia, Harry D. Miller and Louis S. Weller for Plaintiff and Appellant.

Hays, Sanford & Latta and Walter V. Hays for Defendants and Respondents.

## OPINION

**JENKINS, J.**\*—This is a classic hornbook case. Concepts of easements "appurtenant" or "in gross," and "dominant" versus "servient" tenements, which were mystifying in law school, the bane of bar examinations, and buried during long legal and judicial careers, now surface.

A [appellant] owner of Blackacre since 1976, seeks to subdivide his 16-acre parcel and obtain access by a road across Whiteacre (owned by B [respondents]) to a public street. A's predecessor in title C [Murphy] had used the road only ten times per year—five each in February and July—to bring in equipment for spraying and picking in his apricot orchard. B's predecessor in title D [Anderson] had in 1947 carved out Whiteacre from a larger parcel, Greenacre, reserving the road easement now being sought by A. By deed, describing the easement as appurtenant, reservation was granted by D to a landowner adjacent to Greenacre, E [Davies]. In 1967, Western Title became titleholder of the balance of Greenacre, and in 1976 granted A an easement across its property, and across B's property.

The road, improved and maintained by B, E and his successors, is used by them for access to and from their single family residences. A, and a few others, have used the road from time to time for sightseeing, as a lovers lane, access to a water tank, etc. B had put up signs that it was a private road and would frequently tell people to leave, although no chains were ever placed to obstruct passage.

█ A now seeks to quiet title to an easement for residential purposes for his subdividees, and B strenuously objects. A appeals a lower court decision giving only a limited right similar to that of his predecessors in title, i.e., five times each in February and July.

---

\*Assigned by the Chairperson of the Judicial Council.

What are the rights of the parties?

A's rights depend upon his establishing an easement, upon terms sufficiently broad to permit multiple residential use by his proposed subdividees. ■ An easement may be appurtenant or in gross. It is appurtenant when it is attached to the land of the owner, which is the dominant tenement, and burdens the land of another, the servient tenement. (3 Witkin, Summary of Cal. Law (8th ed. 1973), Real Property, § 341, pp. 2041-2042.) An easement in gross is not attached to any particular land, but belongs to a person individually. (3 Witkin, *supra.*) ■ Easements may be created by express words, by grant or reservation, usually by deed, by implication (Civ. Code, § 1104) (usually involving division of land); by necessity (3 Powell on Real Property, § 410) and by prescription (open and notorious use, continuous, hostile to owner, exclusive and under claim of right). (3 Witkin, *supra,* p. 2059.)

Easements are presumed appurtenant unless there is clear evidence to the contrary. (*Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 29 [109 P.2d 329].) Although a grantor *may* reserve interest in property to a stranger to grantor's title (*Willard* v. *First Church of Christ, Scientist* (1972) 7 Cal.3d 473 [102 Cal.Rptr. 739, 498 P.2d 987]) that intent must be clearly shown, which may be done by extrinsic evidence. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 523 [67 Cal.Rptr. 761, 439 P.2d 889].) ■ The record here reveals no facts which indicate D intended his reservation of rights to be personal; he retained large portions of Greenacre, which he subsequently granted to others; his grant to E described the easement as "appurtenant." The burden of overcoming the inference of appurtenancy is not met, and D did not have an easement in gross which his successor Western Title could deed to A.

But A does have an appurtenant easement, not by deed but by prescription. His predecessor D used the roadway openly and notoriously, hostile to its owners, for more than five years, under claim of right. (*Pacific Gas & Electric Co.* v. *Crockett Land & Cattle Co.* (1924) 70 Cal.App. 283 [233 P. 370].) That use attached to the dominant tenement, Blackacre, and burdens Whiteacre, the servient tenement. Running with the land, it passed to A upon his purchase.

■ There is a strict limit, however, to that use. Formerly, it was very strict, was "fixed and determined by the manner of use in which it originated ... [and] cannot be extended or increased so as to enlarge the burden except by grant or by adverse user which has been acquiesced in

. . . ." (*Bartholomew* v. *Staheli* (1948) 86 Cal.App.2d 844, 850 [195 P.2d 824].) That rule has been modified in *Gaither* v. *Gaither* (1958) 165 Cal.App.2d 782 [332 P.2d 436], if the change is one of degree, not kind. A further expansion of the strict doctrine occurs by the adoption of principles set out in the Restatement of Property, section 479, in *Hill* v. *Allan* (1968) 259 Cal.App.2d 470, 484 [66 Cal.Rptr. 676]: " 'In ascertaining whether a particular use is permissible under an easement appurtenant created by prescription there must be considered . . . the needs which result from a normal evolution in the use of the dominant tenement and the extent to which the satisfaction of those needs increases the burden on the servient tenement.' "

*Hill* amplifies that, using Restatement comments, to require that the increase be a normal development, reasonably foretold, and " 'consistent with the pattern formed by the adverse use by which the prescriptive easement was created' " (*Hill* v. *Allan, supra*). ▮ The servient tenement, Whiteacre, is now residential. So too is the land from which it was created, Greenacre. Normal residential development might reasonably be foreseen. But Blackacre has never been used for residential purposes, and the pattern of use by which the prescriptive right accrued was for servicing of an apricot orchard during two months of the year, a practice not consistent with a residential pattern.

The requirement that the added use not constitute "[a]n unreasonable increase in burden" which "it is reasonable to assume would have provoked the owner of the land being used to interrupt the use had the increase occurred during the prescriptive period" (Rest., Property § 479, com. c; *Hill* v. *Allan, supra*) is also not met. The use by A's predecessor D, and A (if any) was purely agricultural or for sightseeing, only occasional and never residential. It is clearly reasonable to assume that B, as owner of the servient tenement, would have been, and in fact shows by his actions now, was provoked to interrupt what could become an extensive daily residential use (by an unknown number of subdividees) of the roadway across Whiteacre. Thus neither the test of *Hill* nor *Gaither*, much less *Bartholomew*, is met. If A's position were carried to its logical conclusion, agricultural lands throughout the state could acquire the right to greatly expand their use of an adjacent landowner's property, simply because that neighbor is now making residential use of his own property. Neither case authority, nor the very concept of "prescriptive" use (hostile, adverse, for a period of years) suggest such an extension of rights and burdens should occur.

■ One other possibility of increased utilization by A exists—common law dedication to the public. This can be shown, absent actual consent of the landowner, by activities of the public " 'for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone.' " (*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29, 38 [84 Cal.Rptr. 162, 465 P.2d 50].) That concept of long continued "adverse" use, the public being substituted for an individual in analogous prescriptive use cases, has been applied in both shoreline and roadway property matters.

Though applied, *Gion* was not expanded, and its requirements were found to be lacking in *County of Orange* v. *Chandler-Sherman Corp.* (1976) 54 Cal.App.3d 561 [126 Cal.Rptr. 765], where a beach was used only casually by small numbers of people, the owner attempted to control the use, and no governmental concern was exercised. So too the problem A has here. Use by others was only occasional, improvement and maintenance was by B and other private persons, no governmental activity was involved, and B tried to control usage. Thus, using the *Gion* test, no long continued adverse use by the public, without objection by anyone, is shown. Again, no rights under this theory accrued to A.

■ The court below having made these same determinations, supported by substantial evidence, its judgment must be affirmed. (*O'Banion* v. *Borba* (1948) 32 Cal.2d 145, 147 [195 P.2d 10].)

Scott, Acting P. J., and Feinberg, J., concurred.