Richard WRIGHT, Trustee of the
Buchheim Pasture Trust,
Plaintiff-Appellant,

v.

HORSE CREEK RANCHES, a Colorado Partnership; Shirley Sanders, individually and as President of Red Mountain Enterprises, Inc., a partner in Horse Creek Ranches; Ronald W. Stucki, individually and as a partner in Horse Creek Ranches; Willis Bettis, individually and as Secretary of Red Mountain Enterprises, Inc., a partner in Horse Creek Ranches; and Red Mountain Enterprises, Inc., a Colorado corporation, Defendants-Appellees.

No. 81CA0693.

Colorado Court of Appeals,
Div. II.

Oct. 14, 1982.

Rehearing Denied Nov. 26, 1982.

Certiorari Granted Feb. 14, 1983.

Charles F. Willett, Brown & Brown, James Brown, Delta, for plaintiff-appellant.

Woodrow, Roushar & Weaver, Frank J. Woodrow, Montrose, for defendants-appellees.

SMITH, Judge.

Plaintiff, Richard Wright, seeks to reverse that part of an injunction which allows use of an easement crossing his property for access to recreational residential property on defendants' property. Wright also seeks remand of the order for inclusion of a description of the property. We affirm the order except as to the description of the easement and remand for amendment.

Wright brought this action against Horse Creek Ranches, a Colorado partnership, (Horse Creek) and its individual partners for damages and injunctive relief because of Horse Creek's alteration and enlargement of a prescriptive road easement across the trust property. The easement was used for access to Horse Creek's adjacent ranch, referred to as the Geyer Ranch.

The damages issue was settled prior to trial. The injunction issue, seeking to limit the easement to its historic use during the prescriptive period, was tried to the court.

The trial court initially ruled that Horse Creek and its successors in title to tracts no smaller than 35 acres, had a ten-foot wide easement for a road limited to "residential hunting, recreational, timbering, agricultural (ranching and farming), pasture and use by the Water Commissioner." In response to Wright's motion to alter or amend judgment, the court amended its judgment to enjoin Horse Creek permanently from using the road "as access for any purpose other than hunting, recreational, recreational residences (specifically excluding any permanent residence and any residence on a year around basis), timbering, agricultural (ranching and farming), pasture and use by the Water Commissioner." Wright appeals from that part of the judgment which allowed access for recreational residences. We affirm.

Wright acquired the 402-acre mountain cattle ranch in 1972 as trustee for the benefit of the settlors' three children. The west line of Wright's property (the servient estate) is the boundary line between it and the Geyer Ranch of 830 acres (the dominant estate).

The Geyer Ranch was acquired by Geyer in 1956–1957. It was purchased by Horse Creek in August 1978 for the purpose of subdivision into 40-acre parcels, primarily

for recreation purposes. Prior to the sale of the Geyer Ranch to Horse Creek, Geyer, Wright, and other property owners through whose property the road crossed, entered into an "Easement Declaration and Agreement" which provided in pertinent part that:

> "[e]ach party acknowledges the right of all other parties to this agreement, their heirs, successors and assigns to use and maintain such private road in the same condition as the same presently exists as an access easement to their respective properties . . . . This agreement shall run with the land owned by the parties themselves, their heirs, successors and assigns."

The agreement was recorded.

For more than twenty years prior to Horse Creek's purchase of the Geyer Ranch, the road, which extended one and one-half miles across Wright's property, was used as access to the Geyer Ranch for cattle ranching, hunting, timbering, sight-seeing, and occasionally by the water commissioner. There are remnants of four abandoned homestead cabins on the Geyer Ranch, one of which was occasionally used by Geyer's fence repair crew, and by hunters. There is no evidence in the record that these cabins were used for residential purposes, nor that the road was in existence or used for access to these cabins.

Prior to the initiation of this action, several tracts of Horse Creek's property had been sold in lots of 40 acres or more. One of Horse Creek's grantees has already erected a mountain cabin on his property, and utilizes the road to reach the residence. Wright testified that he had no notice of the sale by Geyer to Horse Creek, nor did he know of Horse Creek's intention to subdivide the property.

The trial court found "that there is a trend in this part of Colorado toward cutting up large ranches into smaller tracts for more limited agricultural use and primarily for recreational use." It then concluded that it would be foreseeable, during the twenty-year period prior to 1978, that large ranches are apt to be divided into smaller tracts, and this division was certainly foreseeable at the time that the easement declaration was entered.

## I.

Relative to his contention that the trial court erred in failing to enjoin Horse Creek and its assigns from using the road for access to recreational residences. Wright argues that the extent and permissible uses of a prescriptive easement are limited to the usage under which the easement was acquired during the period of prescription. While this is a correct statement of the law, Wright's reliance upon it as determinative in this instance is misplaced. In this case, the general law of prescriptive easements has only limited application.

Virtually ignored in Wright's argument is the "Easement Declaration and Agreement" quoted in part earlier. We conclude that this document confirms and, by reasonable interpretation, defines the nature and extent of the easement, the rights concerning which were originally acquired by prescription.

Generally, easements may be created by grant, express or implied, or by prescription. *DeReus v. Peck,* 114 Colo. 107, 162 P.2d 404 (1945). In addition, an easement may exist by virtue of, or it may be defined or confirmed by, an agreement, or covenant. *Reichert v. Weeden,* 618 P.2d 1216 (Mont.1980); *Bayless Investment & Trading Co. v. Bekins Moving & Storage Co.,* 26 Ariz.App. 265, 547 P.2d 1065 (1976); *Boyd v. McDonald,* 81 Nev. 642, 408 P.2d 717 (1965); *Paden City v. Felton,* 136 W.Va. 127, 66 S.E.2d 280 (1951). *See Clark v. Louisville-Lafayette Coal Co.,* 96 Colo. 420, 43 P.2d 386 (1935). *See generally* 25 Am. Jur.2d *Easements and Licenses* §§ 17 and 22 (1966). Such an agreement entered into between the holders of dominant and servient estates operates as a grant, *Reichert v. Weeden, supra,* and is to be construed by the same rules as an express grant. *See Hottell v. Farmers' Protective Ass'n.,* 25 Colo. 67, 53 P. 327 (1898). *See generally,* 25

Am.Jur.2d, *Easements and Licenses* § 22 (1966).

Thus, the parties to the "Easement Declaration and Agreement" here, by their contract, effectuated an express grant of an easement. By the terms of the agreement, the easement is precisely the same one that was acquired by prescription. While the agreement cannot, and did not, diminish or extinguish any of the rights acquired by prescription, it can, and did, by mutual consent, define those rights. Thus, the extent of the easement is to be determined by a reasonable interpretation of that agreement. *Hottell v. Farmers' Protective Ass'n, supra.*

All rights expressly granted or necessarily incident to enjoyment of an easement pass with it. *Smith v. Wright,* 161 Colo. 576, 424 P.2d 384 (1967). In ascertaining whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, it can be assumed that the parties to the grant or conveyance contemplated a normal development of the use of the dominant tenement. *Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 517 P.2d 862 (1974). *See generally Restatement of Property* § 482 (1940). Specifically, a right of way or easement may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted. *Westland Nursing Home, Inc. v. Benson, supra.*

In its order, the trial court specifically allowed use of the road for access to recreational residential property. The court found that at the time of the agreement, surrounding property had been divided into smaller tracts for recreational purposes. Thus, similar division of the Horse Creek property was a normal and foreseeable development and the parties could reasonably have anticipated that the property might be devoted to recreational residences when they entered into the agreement.

II.

Wright also contends that the trial court erred in failing to decree a legal description defining the location of the road. We agree.

"A highway, [private road] however established, should have reasonable certainty of limits and directions. The decree is defective in this respect, but should not be reversed in its entirety as the defect can be remedied by amendment."

*Berry Patch, Inc. v. Lawrence,* 536 P.2d 830 (Colo.App.1975) (not selected for official publication); *Sprague v. Stead,* 56 Colo. 538, 139 P. 544 (1914).

Accordingly, the judgment is affirmed as to nature and extent of use as well as dimension; however, the cause is remanded with directions to the trial court to take such additional testimony as may be required in order to determine an accurate legal description for the roadway. The trial court is directed to amend its judgment accordingly.

BERMAN, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

The record discloses that the "Easement Declaration and Agreement" was negotiated for the purpose of defining the existing prescriptive easement so that Geyer could satisfy the requirement of a title insurance company. The other signators to the agreement were not informed of Horse Creek's intent to subdivide the tract.

The respective properties involved were used to run cattle. These properties were fenced. Ingress and egress was controlled by locked gates. To insure that the use of the easement by prescription would remain as it had been for, at least, the last twenty years the agreement contained the following language:

"[E]ach party acknowledges the right of all other parties to this agreement, their heirs, successors and assigns *to use and maintain such private road in the same*

*condition as the same presently exists* as an access easement to their respective properties." (emphasis supplied)

Horse Creek, in its answer to Wright's complaint, admits that the purpose of the " 'Easement Declaration and Agreement' was simply a reaffirmation and concession with respect to the existence thereof." On appeal neither party claims that the agreement extended or limited the easement acquired by prescription. Thus, the determination by the trial court, and the majority here, that the written declaration created some new expansive grant is misplaced.

In making its determination as to the permitted uses of the road, the trial court relied, *inter alia,* on *Restatement of Property* § 479 (1940). In *Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 517 P.2d 862 (1974), this court applied *Restatement of Property* § 479 and affirmed a trial court ruling that the conversion of a single-family residence into a three-unit apartment building was a normal evolution of the dominant estate, and that the prescriptive easement which had been acquired for purposes of egress and ingress included the altered structure. However, Wright contends that, under the facts of this case, the use of the road for access to residences is not a normal evolution of the condition of the dominant estate as it existed during the period of adverse use. I agree.

In *Board of County Commissioners v. Ogburn,* 38 Colo.App. 212, 554 P.2d 700 (1976), again addressing the extension of a prescriptive easement, we emphasized the basic rule as found in *Restatement of Property* § 477 (1940) which reads:

"The extent of an easement created by prescription is fixed by the use through which it was created."

We then stated that: "[p]assageways by prescription, whether public or private, are confined to the extent of actual adverse usage," and we affirmed the trial court ruling that the adverse use was limited to farmers using horsedrawn wagons and motor vehicles for coal haulage, and by hunters for access to public lands, but remanded for specific findings as to the extent of the

usage in order that the usage be specifically determined.

The rule adopted by the *Restatement* is that the increase in the burden upon the servient estate must be reasonably foretold *and* must be consistent with the pattern formed through the adverse use by which the prescriptive easement was created. *Restatement of Property* § 478 comment b (1940); *see, e.g., Hill v. Allan,* 259 Cal. App.2d 470, 66 Cal.Rptr. 676 (1968); *Cushman v. Davis,* 80 Cal.App.3d 731, 145 Cal. Rptr. 791 (1978); *Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977).

The record does not disclose the dates, if any, of residential usage of the cabins, nor whether the road at issue was indeed used for access to these cabins. Additionally, the trial court's conclusion that there had been use of recreational residences on the dominant estate during the period of adverse use is not supported by the record. What the record does establish is that the uses of the property during the prescriptive period were primarily for ranching, hunting, recreation, and various other purposes, but not for residential purposes. Thus, the extension as claimed by Horse Creek is not "consistent with the pattern formed by the adverse use by which the prescriptive easement was created." *Restatement of Property* § 479 comment b (1940).

Therefore, regardless of the foreseeability of the subdivision of the dominant estate, the trial court erred, because subdivision for recreational residences was not a normal development of the dominant estate as established during the prescriptive period. *See Cushman v. Davis, supra; Gibbens v. Weisshaupt, supra; Aztec Limited, Inc. v. Creek Side Investment Co.,* 100 Idaho 566, 602 P.2d 64 (1979). *Restatement of Property* §§ 478 and 479 comment b (1940). Furthermore, the trial court erred in not evaluating the extent to which the increased needs of the dominant estate increased the burden on the servient estate. *Restatement of Property* § 479 (1940).

Although I would reverse the judgment, I agree with the majority that the matter must be remanded for a description of the

location of the road. *Board of County Commissioners v. Ogburn, supra.*