HENRIETTA MONTESA, Also Known as HENRIETTA RAYGOZA MONTESA, an Unmarried Woman, Appellant, *v.* ADA A. GELMSTEDT, a Widow, Respondent.

No. 3787

May 25, 1954.                                    270 P.2d 668.

*James D. Finch,* of Reno, for Appellant.

*Sidney W. Robinson,* of Reno, for Respondent.

**OPINION**

By the Court, MERRILL, J.:

Appellant as plaintiff brought this suit against respondent charging that flood waters were escaping from respondent's land and flooding appellant's land. She seeks an injunction and damages. The trial court denied relief and she has taken this appeal from the judgment. The parties will be designated as plaintiff and defendant.

On the western edge of the city of Reno, the Lake ditch, diverting water from the Truckee river, skirts what formerly was the Gelmstedt ranch, owned by defendant. From a headgate in the ditch a lateral ditch leads through the ranch property, divides into two branches and then converges upon a drainage system which carries waste water back to the river. For the past 60 years this system has supplied the ranch with its irrigation requirements.

With the growth of the city, substantial portions of the ranch property were subdivided and sold by defendant as city lots. Domestic water was piped to the property by the utility company which serves the urban area. The lateral ditch was not abandoned, however. It continued to supply irrigation water for garden plots,

orchards and similar uses. By 1950 four property owners in addition to defendant, and above her on the course of the ditch, were making such use of it.

In 1950 defendant sold two lots to plaintiff for residential purposes. The deed expressly included "all water and water rights, ditches and ditch rights appurtenant thereto or used in connection therewith." The two branches of the lateral ditch pass through the property so sold. Its western boundary is a private roadway. Adjoining the lots to the west and across the roadway is defendant's home property.

In 1952 plaintiff brought in earth to fill and level that portion of her property to the south of her dwelling house, planning to cover it with topsoil and seed it to lawn. In the course of this work the southern branch of the lateral ditch was filled in. Water passing down it through defendant's property reached the obstruction, spread over the roadway, and flowed onto plaintiff's property. Plaintiff charges defendant with the responsibility for this flooding.

The trial court in holding for defendant found that both branches of the lateral ditch were known to plaintiff at the time she purchased the property, as well as the purpose for which they were used; "that any damage occasioned to plaintiff's property as the result of such waters was occasioned solely by the fact that plaintiff had filled in and covered over said irrigating ditch without any contributing cause whatsoever upon the part of defendant." This determination finds ample support in the record.

Plaintiff raises two points upon this appeal:

First: It is contended that since, in answering the complaint, defendant contented herself with a general denial, the sole issue raised is whether plaintiff's property was flooded. A justification for that flooding, it is

contended, being in confession and avoidance, demands special pleading as an affirmative defense.

The gist of plaintiff's right to relief, however, is not that a condition of inundation existed; but rather that it existed through conduct of defendant which she should be enjoined to cease. Defendant's defense was not a justification for her actions in flooding plaintiff's land, but a denial that she was in any way responsible. The findings are squarely to this effect. The defense, then, went to the very root of the cause of action, destroying rather than avoiding it, and was proper under a general denial. See: 41 Am.Jur. 541 (Pleading, sec. 366).

Second: Plaintiff contends that, since her property was deeded to her by defendant without express reservation of any easement for the lateral ditch, it was wholly free from any servitude in that regard.

We have noted the court's finding, supported by the record, that the ditch was known to plaintiff at the time she purchased the property, as well as the purpose it served. Under these circumstances the recognized general rule is that the purchaser of a servient tenement is charged with notice of the apparent easement. Hatton v. Cale, 152 Ia. 485, 132 N.W. 1101; See: 17 Am. Jur. 1018 (Easements, sec. 130) ; Anns. 41 A.L.R. 1443; 74 A.L.R. 1250. This rule is held to accomplish an implied reservation of easement although at the time the servitude was created both the dominant and servient tenements were in common ownership. Phillips v. Phillips, 48 Pa.St.Rep. 178, 86 Am.Dec. 577; Rollo v. Nelson, 34 Utah 116, 96 P. 263, 26 L.R.A., N.S., 315. This rule in turn was early applied to cases of drainage ditches and mill runs. Seibert v. Levan, 8 Pa.St.Rep. 383, 49 Am.Dec. 525; Sanderlin v. Baxter, 76 Va. 299, 44 Am.Rep. 165; Kelly v. Dunning, 43 N.J.Eq. 62, 10 A. 276 (modified in 46 N.J.Eq. 605, 47 N.J.Eq. 324, 22 A. 128). In the last case cited, still earlier authority is

quoted which seems particularly applicable to the case at bar. It is stated, "A more concise and lucid statement of this principle was made by Baron Martin in Dodd v. Burchell, 1 Hurl. & C. 113. * * * He said: 'If a man has two fields drained by an artificial ditch cut through both, and he grants to another person one of the fields, neither he nor his grantee can stop up the drain; for there would be the same right of drainage [after the grant] as before, since the land was sold with the drain in it.' And Chancellor Zabriskie's statement of the principle is equally pertinent. He said: 'If the owner of a tract of land of which one part has had the benefit of a drain through or in the other part, sells either part, an easement is created by implication of law in or to the other part. And this is the case even if it is the servient part that is sold.' Denton v. Leddell, 23 N.J.Eq. 64."

We conclude that plaintiff took the property subject to the apparent easement.

While the point is not clearly presented, plaintiff throughout her briefs and argument to this court has implied that defendant through nonuser and abandonment had lost her right to use of the southern branch of the lateral. In many respects the pertinent testimony is in dispute and the issue is far from satisfactorily presented. Even assuming, however, that defendant had lost any right to originate a flow of water through the ditch in question, there is nothing in the record to establish that she was attempting to exercise such a right here. She was fifth in line on the course of the ditch. The headgate was controlled by a gatetender for the benefit of all users on the ditch and in accordance with the established water rights of all on the Lake ditch. Under the circumstances the record can hardly be said to support the contention that defendant maintained control over the flow and wrongfully permitted it to continue.

Judgment affirmed with costs.

EATHER, C. J., and BADT, J., concur.

ON PETITION FOR REHEARING

July 1, 1954.

*Per Curiam:*

Rehearing denied.