WILLIAM BOYD AND RUTH BOYD, HUSBAND AND WIFE, APPELLANTS, v. FRANK R. MCDONALD AND MARY M. MCDONALD, HUSBAND AND WIFE, RESPONDENTS.

No. 4909

December 13, 1965                    408 P.2d 717

*Coulthard & Smith* and *Samuel P. Cowley, Jr.*, of Las Vegas, for Appellants.

*George LaVern Albright,* of Las Vegas, for Respondents.

644

# OPINION

By the Court, BADT, J.:

Appellants here, defendants below, William Boyd and his wife Ruth, appeal a declaratory judgment of the Eighth Judicial District Court, that a parcel of the Boyds' land, hereinafter referred to as "Lot 121" is burdened with "easements" benefiting adjacent "Lot 22" owned by plaintiffs below, Frank R. McDonald and his wife Mary.

Initially, the McDonalds purchased "Lot 22" and the motel thereon from Larry and Lottie Johnson. At that time, the Johnsons owned both Lots 22 and 121 and were using a corner of Lot 121 for an alleged private extension of the motel's driveway.[1] A motel sign also was on Lot 121, though some distance from the boundary between Lot 121 and Lot 22, and the west wall and roof of the motel extended 2.6 feet onto the east edge

---

[1]The extent of such alleged private extension of the motel's driveway is better indicated by Mr. Johnson's testimony. (He had first testified that when he operated the motel the entrance was off Hacienda Avenue. "That was the main driveway and main entrance.") "There were tracks across government Lot 121 that led to the motel. I used to park my car at the end of the motel

of Lot 121.[2] A walled patio spread another 12 feet onto Lot 121. The following map, drawn approximately according to scale, copied from a map received in evidence, indicates the situation.

and when I drove out I drove across that lot on to the highway. *The customers did not use that driveway.* It was not blacktopped. It was just two tire tracks across the desert. Cars had been driven out and in there."

On cross-examination, on being asked how he used the little roadway going directly out to Highway 91, he answered: "To drive my car when I went in to town. I parked the car at the end of the motel and had to drive out across. *I* used it as an exit. *Myself.*" (Emphasis supplied.) This falls far short of even a "reasonable necessity."

[2]The 2.6-foot overhang is not contested by appellants. They thus accept this as an implied easement.

A few months later, the Johnsons sold Lot 121 to the Boyds, who eventually demanded that the McDonalds cease maintaining the alleged encroachments and trespasses on Lot 121. In turn the McDonalds instituted the action below to determine their "rights" in the disputed property.

By its amended judgment the court ordered, adjudged and decreed:

"1. That the plaintiffs have an easement for their building and patio and for light and air adjacent to their building over, under and across the following described parcel of land: "The East six (6) feet of Government Lot 121, said Government Lot being located in the Southwest Quarter (SW¼) of the Northwest Quarter (NW¼) of Section 28, Township 21 South, Range 61 East, M.D.B. & M., County of Clark, State of Nevada.

"2. That the plaintiffs have an easement for the purpose of a roadway for ingress and egress over and across the following described parcel of Government Lot 121: The north Forty (40) feet of the East six (6) feet of Government Lot 121, * * *.[3]

"Said easement *being further described* as follows: [Emphasis supplied.] COMMENCING at the Southwest corner of the Northwest Quarter (NW¼) of said Section 28, thence South 89°02'18" East along the South line of Government Lot 121, a distance of 149.46 feet to a point, said point being the TRUE POINT OF BEGINNING; thence continuing South 89°02'18" East a distance of 51.00 feet to the Southeast corner of said Government Lot 121; thence North 00°33'42" East along the East line of said Government Lot 121 a distance of 43.00 feet; thence in a Southwesterly direction to a distance of 66.5 feet more or less to a point in the aforementioned South line, said point being the TRUE POINT OF BEGINNING."[4]

---

[3]It will be noted that the second easement duplicates and overlaps the first easement.

[4]It will be noted that this "further" description is not a further description of the parcel just theretofore described but is a description of an entirely different parcel, being a parcel situated in the southeast corner of Lot 121 abutting on Lot 22 to the east and on Hacienda Avenue to the south.

The amended judgment further ordered, adjudged and decreed "that the plaintiffs have an easement to maintain a motel sign on, over, under and across Government Lot 121 * * *. Said sign may be maintained a distance of eighty (80) feet West from the East line of Government Lot 121; said sign shall be maintained as far to the South line of said Government Lot 121 as possible as to conform with City, County, State or Federal regulations or ordinances. Said easements shall include the right to lay cables or other necessary electrical fixtures, over, under and across Government Lot 121 to said sign."

We have concluded that the lower court's holdings are contrary to applicable law and therefore must be reversed and remanded for additional findings in line with general rules set forth infra.

Both parties have proceeded throughout on grounds of "implied easements." We fear, however, that they have so confused that doctrine that we must begin by examining it at some length.

An easement is "a right, distinct from ownership, to use in some way the land of another." Kutschinski v. Thompson, 101 N.J.Eq. 649, 138 A. 569. "It is an incorporeal hereditament, a servitude imposed upon corporeal property, and not a part of it. It gives no right to possess the land upon which it is imposed, but a right merely to the party in whom the [easement] is vested to enjoy [it]." Chollar-Potosi Mining Co. v. Kennedy, 3 Nev. 361. Easements may be created by express agreement, by prescription (a condition generally analogous to adverse possession), or by implication. As to the last, with which we are concerned here, it generally is said: "the three essential characteristics of an easement by implication are (1) unity of title and subsequent separation by a grant of the dominent tenement; (2) apparent and continuous user; and (3) the easement must be necessary to the proper or reasonable enjoyment of the dominent tenement." Rogers v. Cation, 9 Wash.2d 369, 115 P.2d 702. It is this requirement of "necessity" which often presents to the courts a major

difficulty. There is wide variance as to the degree of necessity required, though the weight of modern authority only requires "reasonable necessity." On examination, we feel an even preferable standard is to construe necessity as really meaning "intent." "The reason that absolute necessity is not essential is because fundamentally such a grant by implication 'depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity of [the easement] that creates it.'" 2 Thompson, Real Property, Perm.Ed., § 337, p. 84; Marshall v. Martin, 107 Conn. 32, 139 A. 348; Rischall v. Bauchmann, 132 Conn. 637, 46 A.2d 898, 165 A.L.R. 559.

Ascertaining "intent," however, presents further difficulties. In Dressler v. Isaacs, 217 Or. 586, 343 P.2d 714, the Oregon Supreme Court presented this analysis:

"* * * It is evident that since we cannot find the grantor's real intent, we must draw the line between absolute need and mere inconvenience at the point where it will satisfy our idea of sound policy. Broadly stated, 'the inference as to intention which is made is influenced largely by considerations of public policy in favor of land utilization.' 4 Restatement, Property, Servitudes, § 476, comment g.

* * * * *

"We think that the proper adjustment of the conflicting claims of the parties in this type of case can be arrived at more directly by attempting to determine what a reasonable grantee would be justified in expecting as a part of his bargain when he purchases land under the particular circumstances. Upon a division of land held under one title the grantee of the quasi dominant parcel is not entitled in every case to an easement predicated upon a previous use by the grantor. He must have reason for assuming that a right to continue the previous use of the quasi easement is a part of the bargain. * * * Since, in this class of cases, direct testimony as to the intent of the parties is absent or unsubstantial, we must come at the problem by considering whether

reasonable men would regard the claimed easement as a legitimate incident of the bargain. * * * Looked at in this light, the test of reasonable necessity may be restated in terms of reasonable expectation. * * * Although we purport to find the grantor's intent in such cases, it is probably more accurate to say that the easement which is finally recognized through the process of construction is law created rather than grantor created. Under these circumstances, we are entitled to look at the reasonable expectations of a reasonable man receiving a conveyance of land."

We emphasize that an easement by implication is, in effect, an easement created by law. It is grounded in the court's decision that as to a particular transaction in land, the owner of two parcels had so used one to the benefit of his other that, on selling the benefited parcel, a purchaser could reasonably have expected, without further inquiry, that these benefits were included in the sale. Minute encroachments generally provide classic examples of easements by implication. Certainly one bargaining for a building can reasonably expect that his purchase includes a right to leave a particular wall standing. Therefore, to be considered are the purchase price,[5] relations between buyer and the seller now severing his heretofore uniform parcel,[6] conduct of persons in similar positions, and occurrences which would put a reasonable man purchasing property on notice at least to inquire further as to the extent of his purchase. In the ultimate, a court must decide whether the situation at the time of severance from the common owner was such as now to require judicial intervention, an intrusion upon the firm lines already drawn by a

[5]See Wilbur v. Council Bluffs, 247 Iowa 268, 73 N.W.2d 112.

[6]Plaintiffs here seek to rely on details of the transaction between the Johnsons and the subsequent purchasers of the severed parcel, the Boyds. This latter sale is immaterial as to the creation of easement by implication, which looks only to conditions at the original severance, i.e., the sale by the Johnsons to the McDonalds. At most, a later sale by the original owner of both parcels might offer some indication of that owner's intent at the time he sold the first parcel.

writing between the parties, and a possible bypassing of the Recording Acts. Such moves are not to be effected lightly.

The difficulty with the instant case is an apparent total confusion by the parties as to what had to be shown to establish an easement by implication. Plaintiffs' most strenuous argument below and on appeal, was that they thought their purchase of the motel and Lot 22 included the area designated Lot 121.[7] If this be true, plaintiffs cannot claim *any* implied easements, since the foundation of an easement by implication is the belief one can use land owned by *another*.[8] Defendants, on the other hand, insist plaintiffs were fully aware of the property lines at time of purchase. Johnson, defendants' witness, testified positively to this.

In granting the "easements," the trial court altered conditions existing at the time the common owner, Johnson, severed. Thus the addition to the driveway allowed below is but a portion of the alleged private driveway existing when the Johnsons sold to the McDonalds; the motel sign now can be moved to a different location on Lot 121; and "six feet" onto Lot 121 was provided for the motel's west wall, whereas the original encroachment was a 2.6-foot wall-and-roof overhang and a 12-foot patio. If an easement is created by implication at the time of initial severance, it then vests, and, absent evidence of termination, it cannot be diminished or abridged. See N. W. Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P.2d 771. Plaintiffs either were entitled to "easements" or they were not; if they were, then under the facts presented they deserve them in full, not three compromised versions.

The court granted plaintiffs an easement of six feet "for their building and patio and for light and air

---

[7]Both Mr. and Mrs. McDonald testified positively and vehemently to this.

[8]Plaintiffs at no time alleged express easements, or easements by prescription. Nor have they sought rescission for misrepresentation or reformation due to mutual mistake.

adjacent to their building  *  *  *." On no grounds can this be sustained. As noted, the west wall and roof of the motel encroach 2.6 feet onto defendants' Lot 121 and a walled patio extends another 12 feet. The 2.6-foot overhang now is conceded to plaintiffs. Using the rule of "reasonable expectations" herein approved, the court might have found an implied easement also existed for the 12-foot patio. No such finding was made. It is reasonable to infer that the trial court rejected respondents' claims to a 12-foot easement for the patio. Instead, both the overhang and patio apparently were considered together and resulted in a "six foot" grant which included an easement for "light and air." The preponderance of modern authority refuses to recognize an implied easement for light and air. Taliaferro v. Salyer, 162 Cal.App.2d 685, 328 P.2d 799; Mannino v. Conoco Realty Corp., 86 N.Y.S.2d 855. We agree, and accept the rationale presented nearly a century ago, in 1874, by Chief Justice Gray in Keats v. Hugo, 115 Mass. 204, 15 Am.Rep. 80:

"The reasons upon which it has been held that no grant of a right to air and light can be implied from any length of continous enjoyment[9] are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed."

In summary, plaintiffs have requested a declaration of their "rights" to three disputed areas of an adjacent lot: a building encroachment, a driveway extension, and

---

[9] i.e., an easement by prescription.

the situs of a sign. Plaintiffs allege they are entitled to an "easement" in these areas. No showings were made of either express easements, or easements by prescription. Thus we must look to implied easements. To gain these, plaintiffs must prove that, as ordinary purchasers, they were correct in having reasonably expected, without further inquiry, that the asserted uses in what was then their sellers' retained land were included as a benefit of the bargain struck for the motel and Lot 22. On two extremes are the wall-and-roof encroachment and the sign. The 2.6-foot encroachment is a typical implied easement and defendants so concede. The sign, on the other hand, was so removed from the boundary of Lot 22 that no reasonable purchaser could have considered it part of the transaction without at least some inquiry. If inquiry had been made, the result, if proved, might have been an *express* easement, or perhaps an allegation of misrepresentation. What cannot be, however, is an implied easement.

The matters of the driveway[10] and the patio are not as clear.[11] Here the court must determine, as a question of fact, whether the McDonalds, as reasonable purchasers knowing their boundary lines, had a right to expect, without further inquiry, that their purchase insured continued use in the added driveway and the patio, though these were not on their land. From the findings below, we have no way of determining whether these facts were ever decided. Therefore we must reverse and remand for a new trial. It is so ordered.[12]

---

[10]We note that ingress to and egress from the motel still are possible without the disputed addition to the driveway. Thus this added portion does not assume the status of a "way of necessity." If we read the photographs correctly, it does not even show a "reasonable necessity." See Johnson's testimony supra.

[11]Cf. Owsley v. Hamner, 36 Cal.2d 710, 227 P.2d 263, 24 A.L.R.2d 112, where the implied easement was "as contemplated [by lessor and lessee] when the lease was made."

[12]Throughout, of course, we have confined discussion to rules applicable to *grants* of easements by implication—the sole concern of the instant facts. We assume, however, that a similar underlying principle of "reasonable expectation" would apply to *reservations* of easements by implication. Montesa v. Gelmstedt, 70 Nev. 418, 270 P.2d 668; Adams v. Cullen, 44 Wash.2d 502, 505, 268 P.2d 451, 453; Hellberg v. Coffin Sheep Co., 404 P.2d 770, 773 (Wash. 1965).

THOMPSON, J., and ZENOFF, D. J., concur.

MCNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District Court to sit in his place.