Argued June 8, affirmed July 27, 1966

# GILL ET AL *v.* HEWITT ET AL
417 P. 2d 399

*Glen R. Jack,* Oregon City, and *Graham Walker,* Portland, argued the cause for appellants. With them on the briefs were Jack, Goodwin & Anicker, Oregon City.

*E. L. Crawford,* Salem, argued the cause for respondent The United States National Bank of Oregon. With him on the brief were Crawford, Garrett & Webb, Salem.

*Kenneth A. Morrow,* Eugene, argued the cause for respondent William Desmond Hewitt. With him on the brief were Venn, Mulder, Morrow & McCrea, Eugene.

Before MCALLISTER, Chief Justice, and SLOAN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

The heirs of Oscar Olson brought a suit to impress a trust upon the assets of the estate of Marie Olson, the deceased wife of Oscar Olson. The sole question is whether the Olsons entered into an oral contract to make wills leaving their property to each other and if he or she be not surviving, to certain relatives, including the heirs of Oscar Olson. The trial court found that no such contract was made. Plaintiffs appeal.

This is a suit in equity, therefore, we try it de novo. However, as we recently stated in another case in which the issue also was whether an oral contract to make a will was made when " '* * * the inferences and innuendoes to be drawn from the testimony are several, great reliance is to be placed upon the findings of the trial judge.' " *Paulson v. Paulson,* 241

Or 88, 94, 404 P2d 199 (1965). We also stated in that opinion the accepted principle: "An oral contract to make a will must be proved by clear, concise, and convincing evidence." 241 Or at 91.

In 1958 and again in 1961 the Olsons executed wills which were identical except the husband's will named the wife as the initial beneficiary and the wife's will was vice versa. Relatives of both were named contingent beneficiaries. Sometime after Oscar's death, Marie executed a new will in which a nonrelative was named the principal beneficiary. This will was probated.

The most cogent testimony was that of the attorney who did most of the Olsons' legal work and advised them on the preparation of the 1958 wills. That testimony was in part as follows:

"Q I believe you stated that Marie said to you that she wanted to see that his people and her mother would not be deprived in case Frosty predeceased her and you stated your aversion to putting that provision in a joint will and you recommended that they not make it. In one instance, did you tell them your reason they not make it in one will?

"A It's a difficult question, Mr. Morrow. I can't say that I did or did not. I say that habitually over many years time, I don't think they should make it in a single instrument, that I have an aversion to wills of that type.

"Q Why? Isn't it true that one cause of that aversion is that it might be construed as being irrevocable?

"A That's the legal reason.

"Q And that's probably the reason you had?

"A That's right, because it straight-jackets them."

■ The strongest inference favorable to plaintiffs that we can draw from all the testimony is that during their marriage both the Olsons intended that at the survivor's death the estate of the survivor would pass to relatives of both. However, it is not reasonable to infer that there was any agreement to this effect.

■ The plaintiffs also contend that the trial court erred in limiting the testimony of witnesses concerning statements allegedly made by Oscar Olson. Assuming the trial court did so rule (and this is not clear) and that such ruling was in error, it cannot avail the plaintiffs on appeal. Testimony was not taken pursuant to ORS 17.045(2) ("under the rule"), therefore, we have no way of knowing whether the ruling prejudiced plaintiffs and the absence of such testimony precludes us from considering it, if the ruling was in error, in a de novo review. *Sutherlin v. Bloomer,* 50 Or 398, 404, 405, 93 P 135 (1907); *Peterson v. Thompson,* 78 Or 158, 163, 151 P 721, 152 P 497 (1915).

Affirmed.