Argued October 30, affirmed December 14, 1972

EVANS ET UX, *Appellants, v.*
KORMAN ET AL, *Respondents.*
504 P2d 110

*Lawrence B. Rew*, Pendleton, argued the cause for appellants. On the briefs were Corey, Byler & Rew, Pendleton.

*Robert W. Collins*, Pendleton, argued the cause and filed a brief for respondents.

BRYSON, J.

Plaintiffs purchased from defendants a residential lot in Pendleton, Oregon, which is bounded on the north by N. W. Ingram Lane and on the east, south, and west by other property of defendants. Plaintiffs commenced this suit to compel defendants to construct a 60′ roadway over defendants' land to provide a southern access to plaintiffs' lot. The complaint alleged that plaintiffs relied on defendants' promise to provide the road according to plans exhibited to plaintiff Arthur R. Evans and that defendants violated an ordinance of the city of Pendleton by selling land by

reference to a subdivision plan which had not been approved by the city. The complaint was dismissed and plaintiffs appealed.

In 1969 defendants owned a parcel of real property in Pendleton which they wished to develop. Defendant Wesley V. Korman, an architect, made several different preliminary subdivision maps in varying degrees of detail, but never filed a final plan with the city. Plaintiff Arthur R. Evans saw Korman's maps but found them unsatisfactory until he was shown Korman's plan of October 1969.

Korman's map divided the entire Korman property into residential lots. The lot in which Evans was interested was the middle lot of five remaining lots fronting on N. W. Ingram Lane, the northern boundary of the Kormans' property. Evans' lot was bordered on the south by a proposed street which extended from Evans' lot south to N. W. Horn Street. Defendants conveyed the lot to plaintiffs for $3,000 by a warranty deed dated November 21, 1969.

Evans, a realtor and home builder, desired to construct a duplex on the lot. Officials of the city of Pendleton and Equitable Savings and Loan Assn. testified at trial that when Evans applied for a building permit and a construction loan at their respective offices he exhibited Korman's map and assured them that southern access to the lot would be provided in the future.

On August 6, 1970, defendant Madeleine C. Korman attempted to dedicate the proposed extension of N. W. 3rd Street to the city of Pendleton. The application was denied. Mr. Korman testified that plaintiffs had access to the back, or southerly, portion of the property they purchased and that defendants have

never prevented plaintiffs from using defendants' land to gain such access. Plaintiffs' duplex was completed in October 1970, and plaintiffs filed this suit on January 20, 1971.

The parties disagree as to existence of an agreement by defendants to construct the roadway. Evans testified that he was told on several occasions, both before and after the conveyance, that the road would be built, either as a paved street or as a graveled road. Defendant Wesley V. Korman testified that although Evans was shown a drawing which depicted a southern access to the lot, Evans was told that defendants had no intention of extending N. W. 3rd Street. The deed of conveyance made no reference to a map or plat and described the property by metes and bounds. Korman stated that his only agreement was that he would not block Evans' access to the southern border of the lot and that he has fulfilled that promise. Defendants attempted to dedicate the proposed street only because they could not afford to develop the street themselves.

■■ We review suits in equity *de novo* on the record. ORS 19.125(3). However, where there is a clear conflict in the evidence or when several inferences may be drawn from the testimony, we place great reliance on the findings of the trial court. *Gill v. Hewitt*, 244 Or 242, 417 P2d 399 (1966); *Paulson v. Paulson*, 241 Or 88, 404 P2d 199 (1965). There is persuasive evidence that defendants did not promise to build the road. A paved street would cost approximately $8,000 whereas plaintiffs paid only $3,000 for their lot. Considering this fact and the credible testimony of defendants, we find there was no agreement to build the road.

■ On appeal, plaintiffs contend that when defend-

ants referred to a map and sold the lot to them, plaintiffs acquired an implied easement by estoppel across the defendants' property, as shown by the map. The first count of plaintiffs' complaint alleges:

> "As a part of the bargain between plaintiffs and defendants, the defendants promised and agreed to provide plaintiffs with a sixty foot street constructed in accordance with the regulations of the City of Pendleton over their property to serve as access to the Southerly portion of the property plaintiffs purchased from the defendants. * * *"

The second count alleges:

> "* * * [D]efendants exhibited to plaintiffs a plan describing in detail the manner in which the property owned by the defendants * * * would be subdivided which plan had located on it a street described as: [description omitted] * * * which street was to serve as access to the southerly portion of the property purchased by plaintiffs from defendants."

No claim for easement by estoppel is pleaded or prayed for. The case was pleaded and tried on the theory that defendants agreed to construct a street for the use of plaintiffs. We therefore decline to consider this contention.

Plaintiffs next rely on an ordinance of the city of Pendleton⊕ and contend:

> "Therefore, no matter what the parties may

---

⊕ At all times here material, the city of Pendleton had in effect Ordinance No. 2327, which states, in part:

"SECTION 2-402. Sale of Land in Subdivision. No person shall transfer, sell, agree to sell, or negotiate to sell any land by reference to, exhibition of, or by the use of a plan or plat of a subdivision before such plan or plat has been approved and recorded in the manner prescribed herein. The description

have agreed upon, or what may have been in the mind of the parties at the time they were negotiating for the sale of the property to plaintiffs, the Pendleton City Ordinances dictated the type of street that had to be constructed.

"Plaintiffs here seek enforcement of the City Ordinance and request the court to direct the defendants to comply with it."

■ No statute or decisions have been cited to support this contention. We conclude that this ordinance does not establish any duty on the part of the defendants to build a road for plaintiffs' use.

Affirmed.

_____

of such lot or parcel by metes and bounds in the instrument of transfer or other documents used in the process of selling or transferring shall not exempt the transaction from the provisions of this ordinance.

"**SECTION 2-703.** Creation of Ways. Any easement of way providing access to property and which is created in order to allow the partitioning of land for the purpose of transfer of ownership or building development, whether immediate or future, shall be in the form of a street in a subdivision * * *."