Argued and submitted October 9, 1987, affirmed as modified October 5, 1988

# SMO,
*Respondent,*

*v.*

# BLACK et ux,
*Appellants.*

(E82-1775; CA A41677)

761 P2d 1339

Doyle L. Schiffman, Roseburg, argued the cause and filed the brief for appellants.

Sharon A. Rudnick, Eugene, argued the cause for respondent. With her on the brief were Stanton F. Long and Harrang, Long, Watkinson & Arnold, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action for a declaratory judgment to establish her right to an easement over defendants' property. The dispute centers on plaintiff's rights to park on defendants' land and to use a footbridge spanning the Smith River. The trial court ruled in favor of plaintiff, and defendants appeal. We affirm in part and reverse in part.

Defendants own a ranch of about 272 acres along the Smith River. Two acres, containing their residence, are located on the west side of the river along Smith River Road; the balance is across the river. Plaintiff's property also lies across the river and to the south of defendants' property. Access from plaintiff's property to Smith River Road requires crossing both defendants' property and the river. During much of the year, plaintiff is able to cross defendants' property along a public right of way known as Fritz Koepke Road, which intersects Smith River Road, crosses the Smith River at a shallow area and then crosses defendants' property to plaintiff's property. The route, however, is impassable because of high water during the winter months or after a heavy rain. Alternative access to plaintiff's property is by a footbridge on defendants' property. Use of the bridge requires that a vehicle be left on the roadway or in a parking area on defendants' property. Defendants dispute plaintiff's right to use the footbridge and to park on their property.

Defendants' predecessors in title, two brothers, Otto and Oscar Olson, built a footbridge across the Smith River in about 1949. In 1963, the bridge was rebuilt with the financial assistance of E. G. Dunn, plaintiff's predecessor. Plaintiff produced a document entitled "Footbridge Access" signed by Dunn and Otto Olson in 1963. It granted Dunn, his heirs and assigns, a perpetual right to use the bridge for ingress and egress to their property. The typed agreement also contains a handwritten provision that maintenance costs were allotted "2 thirds Olson Bros., 1 third E. G. Dunn." There was testimony, some conflicting, about the historical use of the bridge, the parking area and the routes from the bridge to plaintiff's property.

The trial court concluded that the written agreement was binding on the parties and that it granted plaintiff a perpetual right to use the footbridge. It also concluded that

there were easements implied from the bridge access agreement to park two vehicles on defendants' property near the bridge, to go across defendants' pasture after leaving the bridge as long as defendants' crops were not disturbed and, alternatively, to cross defendants' property by the shortest route between the terminus of the bridge and the public road leading to plaintiff's property. The court also declared that maintenance costs be borne two-thirds by defendants and one-third by plaintiff, as specified in the agreement.

Defendants make five assignments which, in essence, contest the judgment of the court without specificity as to particular rulings. Because this is a matter in equity, we review *de novo. Evans v. Korman,* 264 Or 145, 504 P2d 110 (1972). We treat defendants' assignments as requests that we arrive at different conclusions than did the trial court respecting the various rights that plaintiff has.

Defendants' last two assignments concern the written agreement. We consider them first, because the effect of the agreement is central to this controversy. The document containing the bridge agreement was discovered in a lawyer's office after the litigation had begun. It was faded, water damaged and nearly illegible. A documents examination expert presented a reconstruction, which the trial court found was reasonably accurate.[1] Neither party appears to contest now what the document says.

Defendants argue that the agreement is not binding on them, because it was signed only by Oscar Olson and not his brother, who was a joint owner of the property. The agreement had the notation "Olson Bros." above Oscar's signature. The brothers jointly owned the property and operated a sawmill there as a partnership. A partner may convey real property of the partnership. *See Stone-Fox, Inc. v. Vandehey*

---

[1] The text of the typewritten portion, as reconstructed, is:

"KNOW ALL MEN BY THESE PRESENTS that we, the Olson Brothers, hereinafter known as the First Party, for and in consideration of One Dollar and other good and valuable consideration to us in hand paid by E. G. Dunn and Allice Corrine Dunn, B. J. Dunn and Jean Dunn and Grant Dunn, hereinafter known as Second Party, do (hereby give) and grant unto Second Party, their /sic/ heirs and assigns a perpetual right to use the swinging foot bridge over and across the Smith River near Shingle Rapids, about 26 miles from Gardiner, Oregon, for ingress and egress to property that is now owned or may be hereafter owned by Second Party, their heirs and assigns, that lies behind the property now owned by First Party."

*Development Co.,* 290 Or 779, 626 P2d 1365 (1981). We conclude that Oscar Olson was acting on behalf of "Olson Bros." when he signed the document conveying the easement.

■　　　Defendants also suggest in this assignment, without much argument, that they are not bound, because the agreement was not recorded. Apparently, the suggestion is that they are *bona fide* purchasers of the Olson property without knowledge of the bridge access agreement. That is a matter of affirmative defense which must be pleaded and proved. *Stevens v. American Savings Institution, Inc.,* 289 Or 349, 613 P2d 1057 (1980). At trial, defendants filed a motion to amend their answer to allege the defense but specifically withdrew the motion and, on specific inquiry from the court, elected not to pursue the issue at trial. We decline to address it on appeal.

The final assignment also relates to the agreement and is that the court erred in concluding that defendants and their heirs and assigns have to pay two-thirds of the cost of maintaining the bridge. Other than attacking the validity of the agreement, defendants offer no other basis for concluding that they are not bound by the maintenance allocation provisions of the conveyance.

Defendants' first three assignments concern the judgment declaring that there are implied easements for passage to and from the bridge and for parking two vehicles. The agreement did not specify any particular route across defendants property to and from the bridge and did not deal in any way with parking vehicles on the property. The trial court based the judgment on a theory of implied easements for ingress, egress and parking. Defendants contend that there is no support in the evidence for those easements. Plaintiff argues that there is and, alternatively, that she has established a prescriptive easement or an irrevocable license.

■■　　　The essence of an easement by implication is that, when an interest in land is conveyed and the grant contains no express creation of an easement, one may be implied as an intended part of the transaction. *Thompson v. Schuh,* 286 Or 201, 593 P2d 1138 (1979); *Dressler et al v. Isaacs et al,* 217 Or 586, 343 P2d 714 (1959); *Rose et ux. v. Denn et ux.,* 188 Or 1, 212 P2d 1077, 213 P2d 810 (1949). In *Rose,* the court approved the criteria for establishing an easement by implication discussed in *Restatement of Property,* § 476 (1944). Because it

constitutes a burden on the use of land, it is not favored, and one claiming the easement has to prove it by clear and convincing evidence. *Thompson v. Schuh, supra; Dressler et al v. Isaacs et al, supra.*

■　In this case, the Olsons owned the bridge and the land on which it was located on both sides of the river. They conveyed a perpetual right to use the bridge to plaintiff's predecessors, expressly "for ingress and egress to [their] property." The Olsons retained the title to the land and to the bridge, subject to the rights conveyed in the agreement. It is unnecessary to discuss the facts in terms of each criterion listed in the *Restatement.* Some are of marginal significance, but one important consideration in determining the probable intent of the grantor is the necessity of the easement for use of the dominant interest. It requires little discussion to illustrate that a right to cross defendants' property on either end of the bridge is absolutely necessary to the use of the bridge. That supports an inference that the Olsons intended to burden their land with an easement for plaintiff's predecessors to enter the bridge from a public road and to leave the bridge and cross defendants' land to get to their own property.

The principal contention made by defendants, other than that there is no right to use the bridge, is that plaintiff has no right to cross their pasture after leaving the bridge. The court declared that plaintiff had an implied easement to use alternate routes in going from the bridge to her property. The first was to cross the pasture "so long as such use does not actually interfere with defendants' agricultural operations." The second was to cross defendants' property at the shortest route from the bridge to Fritz Koepke Road. That public roadway leads, by a circuitous route, to plaintiff's property. Both routes had been used for many years by plaintiff and her precedessors. The circumstances before 1963, when the bridge agreement was signed, indicate a sporadic use of the pasture route, usually with the permission of the Olsons, coupled with the admonition not to use that route if doing so would damage the crops.

■　We agree with the court that some route across defendants' land was necessarily intended; we do not agree that the Olsons intended to grant the route across the pasture. An

easement ought not be implied merely as a matter of convenience, especially when an acceptable and practical route constituting a lesser burden on the servient estate is available. Consequently, we conclude that the right of passage is restricted to the shortest route from the terminus of the bridge to Fritz Koepke Road and does not include the route across the pasture.

■     Defendants' final contention is that there is no basis to imply an easement for plaintiff to park two vehicles on defendants' land. We agree. Parking may have been done by plaintiff and her predecessors as an incident to using the bridge, but that does not create an implied easement. Before the agreement was executed, the Dunns used the bridge and parked vehicles along the roadway or near the Olson residence and sometimes in the area which is now the fenced parking lot on defendants' property. Parking near the Olson residence and in the parking lot was mainly a matter of convenience for the safety of the vehicles and was done with the Olsons' permission. There is no necessity for plaintiff to park in the area which has been fenced by defendants in order to use the bridge. It simply is a matter of her convenience. We find no sufficient basis from the circumstances up to the time when the agreement was signed to infer that the Olsons intended to burden their land in perpetuity for parking. The court erred in declaring that plaintiff has a right to park cars on defendants' property.

■     Plaintiff argues that, if we reject the court's conclusions that there were easements by implication, the judgment can nevertheless be sustained on the basis of an easement by prescription or an irrevocable license. *See Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972). Because of our conclusions, that argument relates only to the right to park vehicles and to cross defendants' pasture. We conclude that those uses over the years were sporadic, were largely for plaintiff's convenience and were with defendants' and their predecessors' permission. They did not rise to easements by prescription or licenses that have ripened into easements.

Judgment modified to declare that plaintiff does not have right to park motor vehicles on area described in judgment and to declare that plaintiff does not have easement to

cross pasture adjacent to bridge; remanded for entry of judgment consistent with this opinion; affirmed as modified.