*1205
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Appellant Jerald R. Jackson, trustee of the Jackson Family Trust (Jackson), owns a parcel of unimproved land consisting of seven-tenths of an acre located in Alpine County, California (the parcel). Jackson acquired the parcel from E. J. McGah (McGah) in a purchase of a portion of the former Heritage Ranch. The Jackson parcel is bordered on the west by land owned primarily by the National Forest Service. The parcel is located west of and contiguous to property owned by respondents, George Nash II and Kristine Ann Nash, trustees of the George Albert Nash II and Kristine Ann Nash 1984 Family Trust (the Nashes). The Nashes own two and one-half (2.5) acres of property located in Douglas County, Nevada, which they acquired on May 24, 1991. The Nash property is one of four parcels developed as a residential cul-de-sac, the eastern-most parcels of which border on Foothill Road. The Nash parcel was also once owned by McGah.
 

 The instant action arose on or about September 13, 1992, when the Nashes fenced their property with barbed wire. Jackson claimed the fence blocked the only road access to his parcel. Jackson filed a complaint and an application for a temporary restraining order (TRO) seeking to prevent Nash from blocking or otherwise preventing access to Jackson’s parcel. Jackson claimed “an easement by way of prescription, implication and/or necessity.” Jackson’s affidavit in support of the TRO application stated that he had made nonconsensual, open, notorious, and continuous use of the unpaved road crossing Nash’s land for approximately one year. The affidavit further stated that at the time he purchased the property from E. J. McGah, the common owner, Jackson “understood” that continuous adverse use of the unpaved road had been made to access the subject parcel in
 
 *1206
 
 excess of five years. Nash answered and brought a counterclaim for declaratory relief and to quiet title.
 

 On November 24, 1992, the district court granted the TRO on the grounds that Jackson “may have a prescriptive easement” and temporarily enjoined Nash from obstructing Jackson’s access to his parcel. A stipulation was filed December 10, 1992, allowing Jackson to amend his complaint “to allege easement by implication and way of necessity.” A bench trial was held on January 13, 1993. At trial, Jackson stipulated to the dismissal of his prescriptive easement claim.
 

 Jackson presented the following evidence in support of his implied easement claims. Jackson testified that he met with Patricia Clark of Century 21 Realty in 1991 and made an initial offer on the Heritage Ranch property for $350,000. He stated that the selling price on the property was thereafter increased to $450,000 which he understood was to account for additional pieces of property including the seven-tenths parcel in Alpine County. After Jackson moved to Carson Valley in the spring of 1992, he crossed the Nash property several times after the close of escrow to access the parcel before Nash put up a fence blocking his access. Jackson stated that he used the dirt road across the Nashes’ property as he was not aware of any other physical access to his parcel. Jackson never spoke to McGah regarding McGah’s use of the parcel, but rather spoke to “several people in the valley” who had used the pathway, including one woman who told him she had used the pathway in excess of five years. He was not certain what use she had made of the pathway. No one at the Century 21 office told Jackson that access to the seven-tenths parcel existed; however, Jackson had seen people and horses going up and down the path in 1991 and therefore assumed it was accessible.
 

 Jackson testified that after the Nashes fenced their property, he asked the National Forest Service for an easement, to no avail. The National Forest Service indicated it was “not likely” that an easement would be granted. Jackson also testified that he had asked the Wipflis, who own a parcel adjacent to Jackson’s parcel, for an easement: “I pursued all the avenues that I thought I could. An easement from their — cul-de-sac . . . would work as well as an easement from Mr. Nash but the road is already in through Mr. Nash’s.”
 

 In addition to his own testimony, Jackson presented the testimony of Matt Benson (Benson) and respondent George Nash (Nash). Benson worked for McGah as his ranch manager, for twenty-seven years, beginning in 1964. On November 19, 1979, Benson and his wife, Joyce, purchased 13 acres of unimproved
 
 *1207
 
 land from McGah, which included what is now the Nash property. Benson sold the 2.5 acre parcel to Dr. Benninger in November, 1989. Nash purchased the land from Dr. Benninger on or about May 24, 1991. Benson stated that he did not know exactly where the parcel was located as it was never used and “[i]t was worthless ground really as far as we were concerned.”
 

 Benson was asked if anyone used the trail over Nash’s property. He replied: “I would go probably over that probably about two or three times in all the years I was there. I didn’t keep track over the 27 years. Mostly on a horse. A couple of times with a jeep. It’s more or less a jeep trail, or a four wheel drive pick[-]up trail. It has been somewhat altered since I sold the property to Mr. Wipfli and to Mr. Benninger. . . . We had very little need to use that property. I think my son was over it a time or two.” Benson went on to testify that he had no use for the property as it was all high bitter brush. Benson also testified that the property could be accessed by several roads other than the one through the Nash parcel.
 

 Benson stated that McGah was a real estate developer and builder who was very knowledgeable about real estate matters. When queried as to whether McGah had asked him for an easement to access the seven-tenths of an acre parcel when Benson bought the property in 1979, Benson replied: “Absolutely not.” Benson also testified that during his twenty-seven years with Heritage Ranch “[w]e made absolutely no use of the seven-tenths of an acre.” Benson further testified there were never any agricultural or residential improvements on the property. Benson stated that although he had given permission to certain people to ride horses on the trail, there was very little use of the trail until he put the Purshia Hill cul-de-sac in. Benson put up barricades and posted “no trespassing” signs. After he sold properties to Mr. Wipfli and Dr. Benninger, they cleared away brush which made access to the hill more obvious. Benson stated that he would have allowed McGah to cross his property to get to the seven-tenths of an acre lot, since he was his boss, but that “he never asked me to go there and I doubt he was ever on that seven-tenths of an acre.” Upon questioning by the court, Benson testified that access to the parcel through the Faye Canyon road would take a half an hour or more.
 

 George Nash testified that he bought the property on Purshia Hill Road in May of 1991 from Dr. Benninger through Century 21 Real Estate. Nash looked at photographs of the property taken by Jackson and stated that they differed from the way the property appeared at the time he purchased it because the photographs showed “a noticeable four wheel drive trail” that was not there
 
 *1208
 
 when he purchased the property in May of 1991. Nash attested that there was no access road when he bought the property, only a foot path. At the time of the sale, he examined title documents which contained no easements. Nash stated he saw no road and had no reason to inquire about one.
 

 Patricia Clark, a real estate broker who arranged the Jackson property sale, testified on behalf of the Nashes. Ms. Clark stated that the seven-tenths of an acre parcel “was never included in Mr. Jackson[’]s offer and acceptance. It was only conveyed to Mr. Jackson as a bonus or a freebie parcel within maybe a month or two prior to the close of escrow.” Clark stated that McGah had told her he did not “care what you do with the California parcels. I don’t want them. Throw them in with Jerry Jackson[’]s. Keep them. Do what you want with them.”
 

 On February 8, 1993, the district court entered judgment for Nash, finding that Nash’s property was not burdened by an easement for the benefit of Jackson’s property. The district court found that appellant had shown neither an implied easement by necessity nor an implied easement by reservation. Accordingly, the TRO was revoked and the lis pendens was canceled. This appeal followed.
 

 DISCUSSION
 

 Whether the district court erred in determining that an implied easement did not exist.
 

 Where there is substantial evidence to support factual determinations made by the district court sitting as the trier of fact, those determinations will not be disturbed on appeal.
 
 See
 
 Simons v. Donrey Inc., 94 Nev. 696, 697, 582 P.2d 795 (1978). Although an implied easement arises by operation of law, the existence of an implied easement is generally a question of fact.
 
 See
 
 Hewitt v. Meaney, 226 Cal.Rptr. 349, 351 (Cal.Ct.App. 1986).
 

 Jackson contends that the district court erred in finding that Jackson had shown neither an implied easement by necessity nor an implied easement by reservation. Jackson insists that the judgment of the district court was contrary to the substantial evidence introduced at trial. It is well-settled that an easement may be created by implication without a written instrument.
 
 See
 
 Alrich v. Bailey, 97 Nev. 342, 630 P.2d 262 (1981). The two general grounds for the creation of an easement by implication are: (1) the extreme necessity that such a right be recognized, or (2) the intent of the parties as shown by the circumstances.
 
 See
 
 3 Richard R. Powell, Powell on Real Property § 404[2] (1993).
 

 
 *1209
 

 Implied easement by necessity.
 

 As noted by the district court, there is little or no Nevada case law regarding easements by way of necessity. Nevertheless, there is a significant body of well-established precedent from other jurisdictions outlining the criteria of an implied easement by necessity. “[Tjhere is a well recognized and long standing distinction between a right-of-way of necessity arising by operation of law and an easement by implication based upon a preexisting use.” Reese v. Borghese, 30 Cal.Rptr. 868, 872 (Cal.Ct.App. 1963) (citations omitted).
 
 [1]
 
 Notably, questions addressing prior apparent and continuous use, which are quite significant in connection with easements by implication, are not applicable to easements by way of necessity. A way of necessity arises from the “application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses.” Day wait v. Walker, 31 Cal.Rptr. 899, 901 (Cal.Ct.App. 1963). “This presumption is one of fact depending upon the terms of the grant and the surrounding circumstances.” Hewitt v. Meaney, 226 Cal.Rptr. 349, 351 (Cal.Ct.App. 1986).
 

 An easement by necessity will generally be found to exist if two requirements are met: (1) prior common ownership, and (2) necessity at the time of severance. The burden of proof is upon the one who seeks to impose the way of necessity.
 
 See
 
 Oyler v. Gilliland, 382 So.2d 517 (Ala. 1980). In order for an easement by necessity to exist, both the benefited parcel and the burdened parcel must have been once owned by the same person.
 
 See
 
 
 *1210
 
 Day wait v. Walker, 31 Cal.Rptr. 899 (Cal.Ct.App. 1963); Wagner v. Fairlamb, 379 P.2d 165 (Colo. 1963); Close v. Resnick, 501 P.2d 1383 (Idaho 1972). Without such prior common ownership, no easement by necessity will be implied, no matter how strict the necessity. Here, both parties stipulated to the prior common ownership of the properties involved, thus satisfying the first requirement.
 

 The issue as to what degree of necessity need be shown to find an implied easement of necessity is one of first impression in this court. We note there is a significant conflict of authority as to the degree of necessity required before a way of necessity may be implied. Some jurisdictions require that the party claiming such an easement show “strict” necessity.
 
 See
 
 United States v. Rindge, 208 F. 611 (D.C.Cal. 1913); Hewitt v. Meaney, 226 Cal.Rptr. 349 (Cal.Ct.App. 1986) (landlocked parcel); Carlo v. Luscia, 144 A.D.2d 211 (N.Y.App.Div. 1988) (strict necessity must be shown to establish an easement by necessity for landlocked parcel); Myers v. Stickley, 375 S.E.2d 585 (W.Va. 1988) (an existing servitude must be apparent, continuous, and strictly necessary to raise an implied reservation or grant of an easement). Other jurisdictions require a showing of reasonable or practical necessity.
 
 See, e.g.,
 
 LeCatz v. Deshotels, 757 P.2d 1090 (Colo.Ct.App. 1988) (while absolute or strict necessity is not required to create an easement for access, such an easement by implication is not to be sanctioned if available alternatives offering reasonable means of ingress exist);
 
 see also
 
 Wagner v. Fairlamb, 379 P.2d 165 (Colo. 1963); Hitchman v. Hudson, 594 P.2d 851 (Or.Ct.App. 1979); Wagle v. Williamson, 754 P.2d 684 (Wash.Ct.App. 1982).
 

 The distinction between what constitutes “strict” and “reasonable” necessity is not always apparent, but seems to be based on all the circumstances present. We do not find this distinction to be fundamentally critical as the degree of necessity does not, in itself, create a way of necessity. Rather, it is said to furnish evidence of the intent of the parties that a right-of-way is to be conveyed or retained.
 
 See
 
 25 Am.Jur.2d
 
 Easements and Licenses
 
 § 36 (2d ed. 1966 & Supp. 1993). This court has previously indicated that the intent of the parties at the time of the original severance is of paramount importance. With regard to implied easements this court stated:
 

 There is wide variance as to the degree of necessity required, though the weight of modern authority only requires “reasonable necessity.” On examination, we feel an even preferable standard is to construe necessity as really
 
 *1211
 
 meaning “intent.” “The reason that absolute necessity is not essential is because fundamentally such a grant by implication ‘depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity of [the easement] that creates it.”’ 2 Thompson, Real Property, Perm. Ed., § 337, p. 84 . . . .
 

 Boyd v. McDonald, 81 Nev. 642, 648, 408 P.2d 717, 720 (1965). We find this reasoning equally applicable to easements by necessity. Accordingly, we join those jurisdictions that require the party claiming an implied easement by necessity to show: (1) prior common ownership, and (2) reasonable necessity.
 

 The necessity must pertain to the use and enjoyment of land adjacent to the servient estate. Easements by necessity are most often created where a possessor of land has no access to any public roadway except by way of passage through the servient estate.
 
 See
 
 Michael A. DiSabatino, Annotation,
 
 Way of Necessity Over Another’s Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate, Inconvenient, Difficult, or Costly,
 
 10 A.L.R.4th 477 (1981 & Supp. 1993). In such cases the easement is truly indispensable to the enjoyment of the benefited parcel, and hence the intent of the parties to create an easement is more readily presumed. While a showing of reasonable necessity does not require that the passageway be the only one available, something significantly greater than inconvenience to the party claiming the easement must be shown. Although substantial inconvenience is a factor, it must be weighed against the burden and possible damage that could result from imposing an easement across another’s property.
 
 See
 
 Bob Daniels & Sons v. Weaver, 681 P.2d 1010, 1017 (Idaho Ct.App. 1984);
 
 Accord
 
 Cobb v. McCart, 478 So.2d 204 (La.App.Ct. 1985). Present necessity, as well as necessity at the time of severance, must also be shown.
 
 See
 
 Bob Daniels & Sons v. Weaver, 681 P.2d 1010 (Idaho Ct.App. 1984); Clark v. Galaxy Apartments, 427 N.W.2d 723 (Minn.Ct.App. 1988); Wilson v. McGuffin, 749 S.W.2d 606 (Tex. 1988); American Small Business Inv. Co. v. Frenzel, 383 S.E.2d 731 (Va. 1989).
 

 The district court found that Jackson had not shown necessity at the time of severance or at present under either a reasonable or strict necessity standard. The district court concluded that the evidence at trial showed that the Nashes’ parcel was not the only available reasonable access to the seven-tenths acre parcel. We conclude that there is substantial evidence to support this determination. Both Benson and Jackson testified that there are alter
 
 *1212
 
 nate ways to access the parcel. Although Jackson may prefer the more convenient road through the Nashes’ property, this preference is not sufficient for this court to impose an easement. An easement “ought not be implied merely as a matter of convenience, especially when an acceptable and practical route constituting a lesser burden on the servient estate is available.” Smo v. Black, 761 P.2d 1339, 1342 (Or.Ct.App. 1988).
 

 Additionally, there was no evidence that the original grantor, McGah, had ever intended to reserve an easement across the Nash property. In fact, Benson, the original grantee at severance, testified that he had never discussed the matter with McGah. While Jackson claims that he always “assumed” there was an easement across Nash’s land, he testified that he had never spoken to McGah about the matter. Significant too is the fact that McGah is a real estate developer who unquestionably knew what he was doing when he sold the property to Benson. It could be rationally inferred that if McGah had intended to reserve an easement to access the seven-tenths parcel, he would have. This court will not infer an intent to reserve an easement where, as here, there is uncontradicted evidence that indicates a contrary intent. An easement by necessity will not be imposed contrary to the actual intent of the original grantor and original grantee.
 
 See
 
 Roemer v. Pappas, 249 Cal.Rptr. 743, 747 (Cal.Ct.App. 1988); Hewitt v. Meaney, 226 Cal.Rptr. 349 (Cal.Ct.App. 1986).
 

 The district court also concluded that “the cul-de-sac character of Defendant’s property is a valuable asset and this court will not burden the Defendant’s property to the extent requested by Plaintiff without a showing of true necessity.” From this Jackson argues that it was error for the district court to consider the relative value of the parcels. It is proper for the trier of fact to consider the relative value of the burdened and benefited parcels.
 
 See
 
 Boyd v. McDonald, 81 Nev. 642, 649, 408 P.2d 717, 721 (1965). In fact, the reasonableness of the expense of obtaining a way of necessity is made the test of necessity in some cases, to be determined by comparing the cost of creating the way with the value of the property. Under this test, a way of necessity will not be implied if the claimant can obtain another means of access to his land at reasonable expense.
 
 See
 
 25 Am.Jur.2d
 
 Easements and Licenses
 
 § 37 (2d ed. 1966 & Supp. 1993).
 

 The value of the seven-tenths parcel is also significant in determining the intent of the parties. Since access to property is a reasonable condition of a sale, a court may presume that an
 
 *1213
 
 easement is a reasonable construction of the intent of the parties. Jackson testified that he initially wished to purchase and bid on only the larger parcel. He further testified that he believed the sale price of the property was increased due to the addition of the seven-tenths parcel. Jackson’s testimony would tend to support the theory that an easement was an implied condition of the sale. However, his testimony is contradicted by Benson and Clark who testified that the parcel was worthless and was thrown in to the Jackson deal as a “freebie.” Similarly, the purchase agreement does not support Jackson’s belief. This would appear to be another credibility determination best left to the acumen of the district court. Where there is substantial evidence to support the district court judgment, even if there is a conflict in the evidence, the district court’s conclusions will not be disturbed on appeal. Alrich v. Bailey, 97 Nev. 342, 345, 630 P.2d 262, 888 (1981). We conclude the district court did not err in finding that no easement by necessity existed.
 

 Implied easement by reservation.
 

 Jackson contends that McGah intended to reserve an access easement across the property McGah conveyed to Benson, which was ultimately purchased by Nash, at the time of severance. Therefore, as a subsequent grantee of McGah, Jackson argues he would have the same right of access. This court has outlined the three essential characteristics of an easement by implication as: (1) unity of title and subsequent separation by grant of the dominant tenement; (2) apparent and continuous use; and (3) the easement must be necessary to the proper or reasonable enjoyment of the dominant tenement. Alrich v. Bailey, 97 Nev. 342, 344, 630 P.2d 262, 264 (1981); Boyd v. McDonald, 81 Nev. 642, 647, 408 P.2d 717, 720 (1965).
 
 [2]
 
 As discussed previously, the parties agree that the first requirement is met.
 

 The second requirement is that at the time that the common owner severed the two parcels, the owner must have been using one parcel so as to benefit the other in an apparent and continuous
 
 *1214
 
 manner.
 
 Alrich,
 
 97 Nev. at 344, 630 P.2d at 264;
 
 Boyd,
 
 81 Nev. at 647, 408 P.2d at 720. In
 
 Boyd,
 
 this court stated that an easement by implication
 

 is grounded in the court’s decision that as to a particular transaction in land, the owner of two parcels had so used one to the benefit of his other that, on selling the benefit[t]ed parcel, a purchaser could reasonably have expected, without further inquiry, that these benefits were included in the sale.
 

 Boyd,
 
 81 Nev. at 649, 408 P.2d at 721. This is labeled a “quasi-easement” as an owner cannot have an easement in his own land even though the use made of the land is that of an easement. Further, the quasi-easement must have been apparent; the prior use must have been visible or reasonably discoverable.
 
 See Alrich,
 
 97 Nev. at 344, 630 P.2d at 264;
 
 Boyd,
 
 81 Nev. at 647, 408 P.2d at 720. The district court found that there was no evidence that the common owner ever used the route for the benefit of the subject property. We conclude that there is substantial evidence to support this determination.
 

 The evidence at trial indicates that neither McGah nor his ranch manager made continuous and apparent use of the claimed easement to access the seven-tenths parcel. Although McGah himself did not testify, his ranch manager, Benson, testified that McGah made no use of the property. Benson also testified that he would have allowed his boss, McGah, to cross the property; however, McGah never did cross it. Benson testified that he himself had travelled on the path only two or three times on horseback, and “a couple of times” with a jeep, in twenty-seven years. Certain individuals were occasionally given permission to ride horses on the path; however, persons in jeeps and other strangers were told they were trespassing. Benson put up a sign and a barricade to discourage such trespassers. In
 
 Alrich,
 
 this court indicated that “[t]he construction of a fence or otherwise blocking the roads may be considered as evidence of the interruption of apparent and continuous use.”
 
 Alrich,
 
 97 Nev. at 345, 630 P.2d at 264. The only evidence that indicated there might have been prior use of the path was Jackson’s own testimony. Although he had never spoken to McGah regarding McGah’s own use of the parcel, Jackson had spoken to “several people in the valley” who had used the pathway.
 

 As to whether a right-of-way across the Nash property was apparent, six photographs taken by Jackson in December of 1992 show a well-defined dirt road. An apparent use must be detectible by the grantee upon a reasonable inspection of the property.
 
 See
 
 3 Richard R. Powell, Powell on Real Property § 411 [2][a] (1993).
 
 *1215
 
 However, the grantee central to this inquiry is the original grantee, Benson, not Jackson. As discussed previously, Benson testified that there was only a “jeep trail” that was essentially unused. Benson provided: “There was very little evidence of a road when I purchased that from Mr. McGah. . . . [P]eople would go up and look at the view and turn around, or whatever people do. Most of the traffic on that trail would have been by horse back.”
 

 Nash testified that the photographs of the property taken by Jackson differed from the way the property appeared at the time he purchased it as the photograph showed “a noticeable four wheel drive trail” that was not there when he purchased the property. Nash stated that there was no access road when he bought the property, only a foot path. While Nash’s testimony on this matter may have been influenced by his pecuniary interest in the pending sale of his property, the critical testimony is that of Benson, who it would appear, is unbiased. In fact, Benson testified that he and Jackson are good friends who lived together for four months. Based on the above, we conclude that the district court correctly found that there was no prior apparent and continuous use benefiting the parcel.
 

 The third requirement is that of “reasonable” necessity. The district court did not reach the necessity prong, having determined that Jackson had failed to meet his burden of proof in establishing prior beneficial use, or quasi-easement. As discussed previously, we agree with the district court that Jackson has failed to show necessity under either a reasonable necessity or strict necessity standard. Similarly, we conclude there is no evidence to suggest the existence of a quasi-easement. “In the ultimate, a court must decide whether the situation at the time of severance from the common owner was such as now to require judicial intervention, an intrusion upon the firm lines already drawn by a writing between the parties, and a possible bypassing of the Recording Acts. Such moves are not to be effected lightly.” Boyd v. McDonald, 81 Nev. 642, 649-50, 408 P.2d 717, 721 (1965). Further, the record does not reveal any evidence tending to show that the original grantor and original grantee intended to reserve an access easement across the property that is now owned by the Nashes. Accordingly, this court will not imply the existence of such an easement by judicial intervention.
 

 CONCLUSION
 

 We conclude that there is substantial evidence to support the determination of the district court that neither an easement by necessity nor implied reservation exists across the Nash’s prop
 
 *1216
 
 erty in favor of the Jackson parcel. Accordingly, we affirm the judgment of the district court.
 

 [1]
 

 We note that the Restatement does not distinguish easements by necessity from easements created by other forms of implication. The Restatement considers all implied easements together, listing eight factors which are said to be important in determining whether an implied easement should be found. Those factors are: (1) whether the claimant is the conveyor or the conveyee; (2) the terms of the conveyance; (3) the consideration given for it; (4) whether the claim is made against a simultaneous conveyee of a common grant; (5) the extent of the necessity of the easement to the claimant; (6) whether reciprocal benefits result to the conveyor and to the conveyee; (7) the manner in which the land was used prior to its conveyance; and (8) the extent to which the manner of the prior use was or might have been known to the parties.
 
 See
 
 Restatement (Second) of Property § 476 (1977). These eight factors vary in their importance and relevance according to whether the claimed easement originates out of necessity or by other implication. This distinction has led commentators to suggest that a retention of the traditional division between easements by necessity and implication is preferable to the single classification approach of the Restatement.
 
 See
 
 3 Richard R. Powell, Powell on Real Property § 411[1], at 34-91 (1993).
 

 [2]
 

 Variations on these requirements abound, however, the essential requirements remain the same. For example, Wyoming considers the following four requirements essential: (1) the parcels must have been contemporaneously held under common ownership; (2) a use must have been established which subordinated one parcel to the other; (3) such use must have been obvious from a reasonable inspection of the property; and (4) the use must affect the value of the parcel being benefited by the use, and be reasonably necessary for the enjoyment thereof. Corbett v. Whitney, 603 P.2d 1291, 1293 (Wyo. 1979) (citing United States v. O’Connell, 496 F.2d 1329, 1333 (2d. Cir. 1974)).